STATE OF IOWA, Appellee, v. ROY FORTUNE, Appellant.

**CRIMINAL LAW:** Setting Aside Indictment—Estoppel. An accused
1 may not challenge the validity of an indictment and later predicate error on the dismissal of the indictment.

**CRIMINAL LAW:** Appeal and Error—Curing Error. A showing that
2 a confession was properly received in evidence, and later withdrawn

on the presentation of testimony tending to show that it was obtained by improper means, presents no reversible error, when it appears that the court directed the jury to disregard wholly such alleged confession.

**LARCENY:** Value of Property—Instructions. It is sufficient for the court to instruct the jury that the value of the property stolen must be found to be "more than $20."

**INDICTMENT AND INFORMATION:** Requisites and Sufficiency—Nondescription of Thing—Presumption. An allegation in an indictment to the effect that a more particular description of an article was unknown to the grand jury will be *presumed to be true*, in the absence of evidence to the contrary.

**LARCENY:** Included Offenses. The issue of petit larceny need not be submitted, on a record showing that the accused was guilty of grand larceny or not guilty at all.

**LARCENY:** Value—Alleging Aggregate Value Only. An indictment for larceny may allege the *aggregate* value of several articles without any allegation of the *separate* values; and in such case the State need not necessarily prove the larceny of *every* article alleged to have been stolen.

**INDICTMENT AND INFORMATION:** Requisites—Ownership of Property. An allegation that stolen property belonged to what would ordinarily be presumed a partnership is sufficient, even though such partnership relation is not stated.

**CRIMINAL LAW:** Good Character—Instructions. Instructions reviewed, and held sufficient to clearly convey to the jury the idea that evidence of good character may be sufficient to generate a reasonable doubt.

*Appeal from Wright District Court.*—E. M. McCall, Judge.

June 22, 1923.

Rehearing Denied November 13, 1923.

Defendant was convicted of larceny of merchandise from a store building in the nighttime. Facts appear in the opinion. Defendant appeals.—*Affirmed.*

*Martin & Alexander,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,* Assistant Attorney-general, and *J. A. Rogers,* County Attorney, for appellee.

ARTHUR, J.—Prior to and on October 21, 1920, the firm of Charlson & Holt, a partnership, composed of J. E. Charlson and Ed Holt, was engaged in operating a clothing store in the town of Goldfield, Iowa. The store building was located on the main street in Goldfield, which runs north and south. There is only one main business block in Goldfield, and the Charlson & Holt store building is in said block. There were doors at the back end of the building, on the alley, and in the front of the store. These merchants carried, as part of their stock of merchandise, overcoats, shoes, hats, men and boys' furnishings and wearing apparel, including Hart, Schaffner & Marx and Styleplus suits and overcoats, Stetson and Keith Bros. hats, Wilson Bros. neckties, Tilt and Walkover shoes, mittens from different concerns, and work clothes, Railroad King and Robert Kraus overalls. During the night of October 21, 1920, the store was broken into, by forcing the back door, and a large amount of merchandise taken and carried away. Articles taken were 25 Hart, Schaffner & Marx suits, worth from $40 to $57 each; about 2 dozen Stetson hats, worth $7.00 each; 3 Keith Bros. hats, worth $5.00 each; 5 dozen silk shirts, worth $5.00 to $10 each; about two dozen neckties, worth from $6.00 to $24 a dozen; 15 Hart, Schaffner & Marx overcoats, worth $45 to $50 each; about 5 dozen socks, worth $12 to $15 a dozen; and three dozen mittens, worth $72.

The State introduced testimony tending to show that defendant was acquainted with and had associated with Naomi Purvis, Herbert Bige, Oscar Jones, and Mrs. Melissa White, sister of Naomi Purvis; that, in October, 1920, Naomi Purvis was staying at the home of Louis Vance, a farmer, who lived four miles west of Webster City; that, on the night of the robbery, Naomi Purvis went with the Vances to Webster City, where she met her sister, Melissa White, and Herbert Bige, at the home of another sister, Mrs. James Campbell, who lived in Webster City; that defendant called at the Campbell home, driving his Nash touring car, and got Naomi Purvis, Melissa White, and Herbert Bige; that Oscar Jones was with the defendant when

he called at the Campbell home; that defendant had been acquainted with Naomi Purvis for some time, and had taken her riding previously; that defendant drove the car, and Oscar Jones occupied the front seat with him, the others sitting in the rear seat; that, after driving about town for a short time, defendant drove through Eagle Grove, toward Goldfield, and one of the men said they were going to Goldfield to rob a store, or go in a store; that, upon reaching Goldfield, they drove in on a side street, and stopped; that defendant and Bige and Jones got out of the car, and went somewhere; that this was late at night; that the two women, Naomi Purvis and Melissa White, slept for some time in the car, and were awakened when the three men, defendant, Bige, and Jones, returned; that all three of the men brought goods back with them, and put the goods in defendant's car; that Mrs. White asked the men if they really went in, and one of the men said that they did; that the goods were thrown into the car, and the party then returned to Webster City, where Bige, Mrs. Melissa White, and Naomi Purvis got out of defendant's car, and held some conversation with the men, before defendant left them, in which conversation it was said that, if they were found out, the girls would be in as much trouble as they were. It was also said there at that time that the goods would be taken to a Jew at Fort Dodge, where they would be sold; that Bige then took Naomi Purvis to the Louis Vance home, where he arrived about 5 o'clock in the morning.

On the 1st day of December, 1920, officers searched the home of defendant, Roy Fortune, and found merchandise which one of the proprietors of the store identified as property which had been taken from their store. The property so found was left at the Hansen & Tyler garage in Webster City. The articles found in the home of defendant were two hats, a box of socks, four suits, one overcoat, Hart, Schaffner & Marx brand, and a boy's overcoat. The home of defendant was again searched by the sheriff and Charlson, and a Mr. Carl and a Mr. Wheeler went along with the sheriff. In this search there were found four Hart, Schaffner & Marx suits, and some buckskin mittens, which were identified by Charlson as merchandise taken from the store. The same evening, the sheriff and Mr. Charlson went to Fort Dodge, and searched the pawn shop, or secondhand store, of a

Jew named Selicovitz, and found nine Hart, Schaffner & Marx suits, three overcoats, nine silk shirts, two boxes of silk handkerchiefs, and some silk socks,—all of which Charlson identified as his property which had been taken from his store. A day or two later, Charlson had a conversation with defendant at the justice court, in which defendant told him that he had been to see his girl; that the gang had asked him some place in Goldfield that they could rob, and he and his girl had been to a dance; that they were going home, and stopped in Goldfield, and went into a restaurant, and he looked in Charlson & Holt's show window, and knew that it was a clothing store, and that was what decided him that that would be a good place.

George Wheeler, witness for the State, testified to a conversation with defendant during the first search made at the defendant's home, in which Wheeler asked defendant why he had so much goods on hand, and defendant said that he was figuring on getting married and taking a trip, and that he needed a lot of clothing and stuff of that sort. Wheeler testified that, a little later, about 30 minutes, defendant told him that three parties from Waterloo had driven to his home with the merchandise, a week or so before, and left a lot, and drove back, about a week after that, with another load to leave with him, and he then told them he did not want them to leave the merchandise, and they told him they would squeal on him if he did not take it, and so he had to; and that whatever merchandise was there was left for his commission for keeping the first load.

Defendant took the witness stand in his own behalf, and testified, concerning his signing of a confession, that he had signed because of threats made by the sheriff. No denial or explanation was made by defendant as to certain admissions testified to by the State's witnesses, nor did he attempt to explain his possession of the stolen property. Defendant offered testimony of three witnesses as to his good character. W. H. Cunningham testified that he had known defendant and his family; that he had met defendant and other members of the family probably every week for some time,—the record does not disclose how long,—and that the character of the defendant was good; that "his character was good, as far as I knew him."

C. B. Carl testified that he had known defendant about ten

years, while he was living at home with his parents; that, "as far as I know, his character was good during that time."

Defendant also offered in evidence other indictments which had been returned by the grand jury, charging defendant and Herbert Bige jointly with breaking and entering the store of Charlson & Holt, and for larceny, which indictments had been quashed; and a motion by the State for dismissal of said indictments, and the order of court sustaining said motion. At the close of all the evidence, defendant moved the court to direct a verdict in his favor, which motion was overruled, and the case submitted to the jury, with the result that the jury returned a verdict finding defendant guilty. Defendant moved in arrest of judgment and for a new trial, which motions were overruled, and judgment was entered on the verdict, sentencing defendant to an indeterminate term in the state reformatory at Anamosa, not exceeding ten years.

Defendant assigns numerous errors on which he relies for reversal, which we will consider.

I. Following the alleged larceny, indictments were found by the grand jury, charging defendant and one Bige jointly with breaking and entering the store of Charlson & Holt, and

1. CRIMINAL LAW: setting aside indictment: estoppel.

other indictments charging them with breaking and entering a store at Woolstock, in the same county. These indictments were pending until the 13th day of February, 1922, when defendants by written objections challenged the validity of said indictments, on the ground that the grand jury list and panel were not prepared and selected as required by statute, etc. On hearing evidence in support of the objections, the county attorney moved to dismiss the indictments, on the ground that it affirmatively appeared that the grand jury which returned the indictments was not legally drawn; and said motion was sustained, and the indictments dismissed, and the court ordered that the charge against defendant be resubmitted to the grand jury at the April term, 1922. On such resubmission, the indictment in the instant case was returned.

Defendant assigns as error the order of court setting aside said former indictments. Defendant's particular complaint of this order, as we understand him, is that the dismissal of the

former indictments deprived him of a speedy trial, and increased his jeopardy. We can see no merit in such position. Defendant himself raised the question that the former grand jury was illegally drawn, and offered testimony in support of his objections; and the county attorney, being convinced that the grand jury had been illegally drawn, moved for dismissal of the indictments, which motion was sustained.

II. An instrument in writing, purporting to be a confession, signed and sworn to by defendant, was offered in evidence by the State, and received over objection by defendant. The claimed confession recited that defendant and others robbed Charlson & Holt's store; that, after breaking and entering said store, they took certain articles of merchandise and sold said merchandise to H. W. Selicovitz, at Fort Dodge, for $225. It was further recited in said instrument that defendant and others robbed the store of George Wheeler, and took certain articles of merchandise and sold them to Selicovitz; that defendant and others robbed a store in Blairstown, Iowa, and that they also stole some spark plugs at Williams, Iowa. After defendant had testified concerning the claimed confession, and after both parties had rested, defendant moved to exclude the instrument, on the ground that the State had failed to show that the statement was voluntarily made, and that the evidence showed that it was not voluntarily made, but was secured by threats made by the sheriff,—which motion was sustained, and the instrument withdrawn from evidence. On submission of the case, the court told the jury, regarding said claimed confession:

2. CRIMINAL LAW: appeal and error: curing error.

"You are instructed that the paper alleged to have been signed by the defendant, and which has been identified in this case as Exhibit F, has been withdrawn from your consideration, and is no longer in evidence in this case, and you are directed to give no heed thereto."

It not infrequently happens that evidence is received that must be and is withdrawn from the consideration of the jury. When the instrument was offered in evidence, W. H. Cunningham, clerk of the district court, before whom it was signed and sworn to, testified that he said to defendant, before the latter signed and swore to same: " 'Do you realize what you are going

to sign here?' He said he did, and I told Fisher [sheriff] to read it to him, and he signed it, and I asked him if it was his voluntary act. He said it was, and I put my seal on it."

When the instrument was received in evidence, it was not disclosed that threats had been made, to secure such statement. No such objection was then made. It occurs to us that, if counsel for defendant had then called to the attention of the court that they expected to offer testimony to show that the sheriff (who was then dead) had procured defendant to sign the instrument by threats, and had requested that reception of the instrument be withheld until such testimony was introduced, the instrument would not have been received in evidence. The instrument was afterwards excluded, when it was shown by the testimony of defendant that he signed the same under threats made by the sheriff. The claimed confession was made eligible for the record in the first instance by the testimony of the clerk above quoted, and was excluded from the record on the testimony of defendant. There was testimony introduced by the State, of admissions made by defendant of substantially the same kind and effect as the statements made in the claimed confession. We think that the fact that the claimed confession was received in evidence in the first instance, and afterwards withdrawn, could not have influenced the jury in arriving at a verdict. We think that the withdrawal of the instrument cured any effects the reception of it in evidence may have had. We think that the withdrawal of the instrument and the giving of the specific instruction as to it which was given would have the salutary effect of curing the record of prejudice to defendant. There was ample competent evidence to sustain the verdict.

III. Appellant urges that the court erred in failing to instruct the jury to find the value of the property alleged to have been stolen. The evidence is without dispute as to the value of the property alleged to have been stolen. It is established by the evidence, without dispute, that the property found in the immediate possession of the defendant far exceeded in value the sum of $20. In fact, the undisputed evidence fixed the value of the property taken at more than $3,000. The court did instruct the jury that it was incumbent upon the State to establish beyond

3. LARCENY: value of property: instructions.

a reasonable doubt, among other things, "that the aggregate value of said property so stolen was more than $20." The instruction given on that point was sufficient. *State v. Hayward*, 153 Iowa 265.

IV. The indictment charged that defendant did steal, take, and carry away certain clothing, gentlemen's wearing apparel, silk shirts, neckties, and divers and sundry other articles,

4. INDICTMENT AND INFORMATION: requisites and sufficiency: nondescription of thing: presumption.

of the aggregate value of $3,000, and contained a clause commonly found in an indictment for larceny, as follows:

"A more particular description of the said property being to the grand jury at this time unknown."

It is the contention of appellant that said clause is a material allegation, and the court erred in failing to instruct the jury that the State was required to establish by evidence, beyond all reasonable doubt, the fact that "a more particular description of the property" was to the grand jury unknown, and that such omission is fatal to conviction. The contention of counsel for appellant is supported by the holdings of some courts. Among the cases so holding are *People v. Hunt*, 251 Ill. 446 (96 N. E. 220); *Merwin v. People*, 26 Mich. 298 (12 Am. Rep. 314); *Brown v. People*, 29 Mich. 232; *Hamilton v. State*, 60 Ind. 193 (28 Am. Rep. 653); *Ware v. State*, 2 Tex. App. 547. In *People v. Hunt*, supra, which is perhaps the leading case in support of appellant's contention, the court said:

"Where matters which ought to be stated in the indictment are omitted, and the excuse is stated that such facts were unknown to the grand jurors, the truthfulness of the excuse given is put in issue by the plea of not guilty, and the burden is upon the State to prove such allegation. *Cameron v. State*, 13 Ark. 712; *Reed v. State*, 16 Ark. 499; *Regina v. Campbell*, 1 C. & K. 82; *State v. Stowe*, 132 Mo. 199 [33 S. W. 799]; *Merwin v. People*, 26 Mich. 298 [12 Am. Rep. 314]."

Authorities to the contrary, holding, in substance and effect, that, where there is an averment in an indictment that a person or matter is unknown to the grand jury, the truth of such allegation is presumed, if nothing appears to the contrary, and need not be proved, are (some of them) *Coffin v. United States*,

156 U. S. 432 (39 L. Ed. 481); *Commonwealth v. Thornton,* 14 Gray (Mass.) 41; *Reeves v. Territory,* 10 Okla. 194 (61 Pac. 828). In *State v. Taunt,* 16 Minn. 109, the court said:

"The allegation 'that a more particular description of the articles is unknown to the grand jury' is not traversable."

In *Coffin v. United States,* supra, the following request for an instruction was made and refused:

"Each of the forty-six counts of this indictment, except * * *, alleges that certain facts therein referred to are unknown to the grand jury. Thus the * * * counts each aver a misapplication of the funds of said bank by said Haughey with intent to convert the same to the use of the Indianapolis Cabinet Company and to other persons to the grand jury unknown. The averment that the names of these persons were unknown to the grand jurors is a material averment, and is necessary to be proven by the government in order to make out its case in each of said counts, because in each of said counts the charge is of a misapplication of a single, definite, fixed sum with an intent to convert the same to the use, not merely of the Cabinet Company, but of other persons. If, as a matter of fact, no evidence has been placed before you showing or tending to show that names of such persons were unknown to the grand jury, then, as to these counts, the government's case has failed."

In passing on the refusal of the lower court to give the requested instruction, the Supreme Court of the United States said:

"In connection with this ruling the bill of exceptions states that there was no evidence whatever on the subject offered by either side, and nothing to indicate that there was knowledge in the grand jurors of the matter which the indictment declared to be to them unknown. The instruction was rightly refused. It presupposes that, where there is an averment that a person or matter is unknown to a grand jury, and no evidence upon the subject of such knowledge is offered by either side, acquittal must follow; while the true rule is that, where nothing appears to the contrary, the verity of the averment of want of knowledge in the grand jury is presumed."

This precise question has not been before presented to our court, so far as we are informed. We think that the rule con-

tended for by appellant is neither sound nor tenable. Omission of the court to treat the clause in the indictment that "a more particular description of the said property being to the grand jury at this time unknown" as a material allegation that must be proven by the State, and failure to instruct thereon under the facts of the instant case, did not constitute error.

V. Appellant assigns as error that the court did not instruct as to the included offense. It is sufficient to say on this point that the evidence shows without dispute that the defend-

5. LARCENY: included offenses.

ant is either guilty of the greater crime charged in the indictment or not guilty of any crime, and it was not necessary to instruct on the included offense of simple larceny. *State v. Haywood,* 155 Iowa 466.

VI. The indictment alleged the articles stolen to be "certain clothing, gentlemen's wearing apparel, silk shirts, neckties, and divers and sundry other articles, a more particular descrip-

6. LARCENY: value: alleging aggregate value only.

tion of the said property being to the grand jury at this time unknown, of the aggregate value of $3,000." It is better pleading to allege the value of each article or series of articles alleged to have been stolen. But we have held, and we think our holding is in accord with the weight of authority, that an indictment for larceny is not defective because it specifies a number of articles as stolen, and alleges the aggregate value only. *State v. Hart,* 29 Iowa 268; *State v. Brew,* 4 Wash. 95 (31 Am. St. 904).

The particular complaint made by the appellant is that the indictment alleges the theft of several articles, and that the aggregate value of the articles only is alleged; that, under such allegations, to sustain the indictment it is necessary for the State to prove the larceny of all of the articles alleged to have been stolen; that a failure to prove larceny of all of the articles going to make up the aggregate alleged value of $3,000 was a failure to prove the value of any article; and that the case must fail on that account. Counsel cite authorities supporting such doctrine: *Hope v. Commonwealth,* 50 Mass. 134; *McCarty v. State,* 1 Wash. 377 (25 Pac. 299). Other cases so holding are *Ware v. State,* 2 Tex. App. 547; *Meyer v. State,* 4 Tex. App. 121; *Doyle v. State,* 4 Tex. App. 253; *Thompson v. State,* 43 Tex. 268.

Authorities holding to the opposite view are *State v. Buck,* 46 Me. 531; *Commonwealth v. Sawtelle,* 11 Cush. (Mass.) 142; *Commonwealth v. O'Connell,* 12 Allen (Mass.) 451; *Commonwealth v. Duffy,* 11 Cush. (Mass.) 145.

In *State v. Buck,* 46 Me. 531, the indictment charged the stealing of two robes, of the aggregate value of $36. Defendant was convicted of stealing only one of the robes named in the indictment, and the jury found that the one robe stolen was of the value of $20. The court held that:

"Notwithstanding only the collective value of the property alleged to have been stolen is stated in the indictment, yet, if the jury find the defendant guilty of stealing a part only of the property, and, in their verdict, state the value of the articles so stolen by him, judgment may be well rendered upon such verdict."

In the instant case, the indictment does not enumerate the specific articles alleged to have been stolen. On the trial, the State proved the several and specific articles stolen, and their individual values. We think that the articles shown to have been stolen were referable to the articles mentioned in the indictment, and that all of the articles alleged in the indictment to have been stolen were proved by the evidence to have been stolen. Under the instruction, correctly given on that question, the jury was not required to find the aggregate value of the merchandise stolen, but only that it was of the value of more than $20. By calculation from the undisputed evidence, the jury could have found that the aggregate value of the merchandise stolen was $3,000, and more. This answers appellant's complaint.

However, we think the better rule is, and we so hold, that, where an indictment for larceny states only the aggregate value of the articles alleged to have been stolen, and the evidence fails to establish the theft of all of the articles, a verdict of guilty would not fail of support for that reason, if, as in the instant case, the value of the articles stolen is established by the evidence in the amount required by the statute under which the indictment is found and the conviction had.

VII. The indictment alleged the ownership of the property stolen to have been in Charlson & Holt. Appellant claims

that where, as in the instant case, the indictment charges the

7. INDICTMENT
AND INFORMA-
TION: requi-
sites: ownership
of property.

property stolen to have been that of Charlson & Holt, and does not state whether Charlson & Holt are a copartnership, corporation, or other legal entity, and fails to state the names of the partners, if it is a partnership, the indictment is void, and no conviction can rest thereon. The testimony shows that the firm of Charlson & Holt was a partnership, engaged in the clothing business in the town of Goldfield, Iowa, and that they were the owners and in possession of the store that was robbed. The allegation that ownership of the property stolen was in Charlson & Holt, was sufficient. In fact, the firm name, Charlson & Holt, in itself implied a partnership or firm. *State v. Bartlett,* 128 Iowa 518; *Porter v. Commonwealth,* 22 Ky. Law Rep. 1657 (61 S. W. 16); *People v. Goggins,* 80 Cal. 229 (22 Pac. 206); *State v. Fogerty,* 105 Iowa 32. The evidence in this case shows that the store was known as the Charlson & Holt store; and in the small town, with but one business block, where it was located, there could be no confusion or failure of proper identification.

VIII. Appellant complains of Instruction No. 7, concerning the good character of the defendant, because said instruction failed to inform the jury that evidence of good character is alone

8. CRIMINAL LAW:
good character:
instructions.

sufficient to generate a reasonable doubt. The instruction given reads:

"Evidence has been produced by the defendant in this case for the purpose of establishing the good character of the defendant. You are instructed that proof of good character is a matter which should be considered in connection with all the facts and other circumstances in evidence before you, in determining the guilt or innocence of the defendant. Its weight and value are to be determined by you; and if, in connection with all the other proved facts and circumstances in evidence before you, you have a reasonable doubt of the defendant's guilt, then he should be acquitted."

The criticism of the instruction is without merit. We think the instruction clearly conveyed to the jury that evidence of good character is sufficient to generate a reasonable doubt. *State v. Dunn,* 178 Iowa 868. Appellant requested no instruction on

this point, and cannot complain that it was not more specific. *State v. Poder,* 154 Iowa 686.

We have carefully examined the record. We find no prejudicial error. The rights of defendant were carefully and fully protected. Upon the whole record, we think the case must be, and it is, affirmed.—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.