STATE OF IOWA, appellee, v. ALVA MILTON HORRELL, appellant.

No. 52306.

(Reported in 151 N.W.2d 526)

June 6, 1967.

Jesse, LeTourneau & Johnston, of Des Moines, for appellant.

Richard C. Turner, Attorney General, David A. Elderkin, Assistant Attorney General, Ray A. Fenton, County Attorney, and Donald Starr, Assistant County Attorney, for appellee.

LARSON, J.—The defendant, Alva Milton Horrell, and Eldon Harold Manser were indicted by the Polk County Grand Jury, which charged them with the crime of larceny in the nighttime of personal property of the value of over $20, as defined in section 709.4 of the 1962 Code. On arraignment defendant entered a plea of not guilty and his separate trial began on May 12, 1966. His motions for directed verdict, made at the close of the State's case and at the time both parties rested, were overruled and the jury brought in a verdict of guilty. When his motion for a new trial was overruled on May 23, 1966, he was sentenced to the Men's Reformatory for a term of not more than ten years. He appeals. We affirm.

Appellant assigns as error (1) the court's failure to grant his motions for a directed verdict and his motion for a new trial when it appeared the evidence was insufficient to sustain a conviction (2) the giving of an instruction on aiding and abetting when the evidence did not warrant an instruction on that theory and (3) the giving of an incorrect and improper instruction on aiding and abetting, possession of stolen property, and permissible inferences in such matters. He combines them into questions of evidence sufficiency and adequacy of instructions when applied to the facts of this case, and argues them pursuant to rule 344(4)(b), Rules of Civil Procedure.

I. The rules governing our consideration of a claim of insufficient evidence in a criminal case are so well established that they need no extended discussion here. The evidence must be viewed in the light most favorable to the State. It is not our function to decide disputed fact questions in such cases. That is the function of the fact finder, and its verdict is binding upon us unless we are satisfied it is without substantial support in the evidence or it is clearly against the weight of the evidence. State v. Frink, 255 Iowa 59, 64, 120 N.W.2d 432, and citations.

■ ■ II. A jury question in a criminal case may be generated solely by circumstantial evidence. State v. Hiatt, 231 Iowa 499, 507, 1 N.W.2d 664, 668, and citations. The quality of the evidence necessary to convict, circumstantial or direct, we have said, must be sufficient to raise a fair inference of guilt. It must generate something more than suspicion, speculation or conjecture. State v. Myers, 253 Iowa 271, 274, 111 N.W.2d 660; State v. Wesson, 260 Iowa 331, 149 N.W.2d 190, 194.

In State v. Miskell, 247 Iowa 678, 686, 687, 73 N.W.2d 36, 41, we stated the rule thus: "In a criminal action the cause should be submitted to the jury, and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge. * * * the State's evidence, with all reasonable inferences therefrom, must be taken as true and viewed in the light most favorable to the State, and it is necessary to consider only the evidence which tends to support the verdict."

■ ■ III. The common purpose among two or more persons to commit a crime need not be shown by positive evidence, but may be inferred from the circumstances surrounding the act and from one's conduct before, at the time of, and after commitment of the illegal act. State v. Kneedy, 232 Iowa 21, 28, 3 N.W.2d 611, and citations. In such cases the evidence which would support a conviction as a principal ordinarily would also support a charge as an accessory, for the distinction between a principal and an accessory before the fact has been abrogated in this State. Section 688.1, Code 1966. Any participation in a general felonious plan, providing that such participation be concerted and that there is evidence of actual or

constructive presence at its commission, is generally held sufficient to render one criminally liable as a principal. State v. Kneedy, supra.

 Knowledge or intent is usually inferred from the circumstances. State v. Van, 232 Iowa 34, 2 N.W.2d 748. Participation therein may be inferred from presence, companionship and conduct before and after the offense is committed. State v. Myers, supra; 22 C. J. S., Criminal Law, sections 87 and 88.

We do not know whether the jury found defendant guilty as a principal or as an aider and abettor, but, since both issues were submitted, his conviction must rest upon both. If his conduct, unexplained during the period of time involved, was sufficient to sustain an inference of guilt and was inconsistent with any rational theory of innocence, the conviction must be upheld. It is for the jury to decide as to the truth and veracity of the explanation. State v. Daves, 259 Iowa 584, 144 N.W.2d 879, 881; State v. Myers, supra, 253 Iowa 271, 274, 111 N.W.2d 660, 662.

With these rules in mind, our preliminary inquiry here is whether the evidence, properly viewed, creates more than a suspicion of defendant's participation and guilt in this matter. After a careful study of the evidence and consideration of the permissible inferences, we conclude that it does. There is no substantial conflict in the evidence, which reveals the following facts and circumstances.

 IV. It appears defendant had been living in Marshalltown, had recently been separated from his wife and child, and had come to Des Moines about two weeks prior to March 27, 1966, on his way to his former home in Texas. He met an old friend, Eldon Manser, who worked at a parking ramp, obtained work at the same place and roomed with Manser while he earned money to finance his contemplated trip. Manser owned a car and also planned a trip south.

After work on Saturday, March 27, they received their pay and a gift of two used tires from their foreman, went to their room to clean up, pack, and put their things in the car, and then went out to a service station in West Des Moines to have the car serviced and the tires changed and rotated. They arrived at this

station about midnight. Defendant left a $20 deposit to cover the work the attendant was asked to do while they walked to a nearby tavern. The tavern being closed, defendant and Manser returned and hung around inside the building while the sole attendant, Jerry Dean Kerr, worked on their car and also serviced cars in the drive needing gas. As it was cold, the overhead doors to the wash and oil change bays were kept closed, and side doors were used for ingress and egress. With these interruptions it required about an hour and a half to complete this job.

Mr. Kerr recalled an unusual occurrence while he was working on the car's left front wheel. Someone came from the washroom, where some tires ready for mounting were kept at that time, opened the right rear door of the car, and put something in the back seat, although the car was some two feet off the ground on the hoist. He said it was one of the two, but he could only see the party's feet at the time. Neither defendant nor Manser said anything about the purchase of tires, and no other persons were in or about the bay area during that period.

Mr. Kerr testified he observed the back seat of this car when they came to the station, and noted a pile of clothes in the left corner behind the driver. When the work was finished, Manser drove the car out of the bay to the gas pump, and defendant went into the office to settle up for the gas and service. While filling the gas tank Kerr again looked into the back seat and saw a coat which laid over a form about the size of a tire.

About this time the station owner's 18-year-old son, Robert Field, came in and Kerr asked him to look in the back seat of the car to see if he could see anything he thought these men had taken when he was out of the building. Robert testified he went out to look and it appeared to him there was a tire in the rear seat with a cover over it.

Shortly thereafter Officer Ward, of the West Des Moines Police Department, stopped and parked his patrol car in the drive. Kerr told the officer of his suspicion when he came in from filling the gas tank. At that time they observed Manser drive slowly away, leaving defendant in the station office to settle their bill. Defendant then left and walked down the street. Officer Ward took off after Manser and the car to check it out,

lost it but returned in time to see Manser pick up the waiting defendant and drive toward Des Moines on Grand Avenue. He gave chase and, after some difficulty, stopped the car in the 5900 block. Ward testified when the driver got out and started back toward the patrol car, he left his door open. After looking at Manser's driver's license, Ward walked up and looked into the car. He could see tires partially covered with clothing on the back floorboard of the car. They were not visible from the top, but were at the side. The defendant was sitting in the passenger's seat at that time. The officer radioed for assistance to take them back to the police station. Defendant did not give his correct name until a later search of his luggage on the back seat of the car revealed his true identity. Pursuant to obtaining a search warrant, a search of the car revealed three tires taken from the station, which had been in a pile of four stacked in the washroom for mounting on a customer's car the next day.

Appellant denied any knowledge of the tires found in the car and said he knew nothing of any plan to steal anything at that service station. He testified the first he knew that the tires had been stolen was "when the officer informed us about the tires." He explained the alias by saying he did not want his wife to find him in Iowa. He denied taking any part in the stealing of the tires, but admitted "there was a beer can or bottle put in the car while the car was being worked on at the station." The jury, weighing this evidence with other circumstances, evidently did not believe him, and his admission of a prior conviction of a felony (a forgery) in July 1958 did not aid his credibility.

We are satisfied the facts and circumstances revealed by this record raise a fair inference of defendant's guilt. One of these men, or both, removed those tires from the station and placed them in the automobile while it was being serviced, and arranged the clothes so as to hide them from the attendant. From this evidence the jury could find they acted in concert. State v. Blake, 208 Iowa 995, 1000, 221 N.W. 569; 52 C. J. S., Larceny, section 107(b). These men had a common purpose and interest in the trip to Texas, came to this station together, were alone in the station for long periods, had their belongings in the back seat of the car where the stolen tires were secreted, and left

under circumstances which would indicate an effort to avoid any investigation or detection. Defendant diverted the attendant's attention in paying the bill while Manser drove off, confident that he would come back for him when danger of detection was past. Defendant's admission that the car door was opened while it was being serviced, to put in a bottle or can of beer, disclosed his awareness of the contents of the back seat. The jury could infer this action really was to secure the cover placed on the tires which had been taken while the attendant was outside.

Much more than mere association, suspicion, speculation and conjecture appears here. These men associated in a travel enterprise, were constantly together during the time the tires were taken, and would both profit from the taking. While it is possible that a mere stranger to the car owner, a hitchhiker or a guest, would not know of the plan to steal the tires or in anyway encourage that theft, under these circumstances we think the jury could find both participation and aid by defendant and that much more than mere. presence at the scene of the larceny appears here. As bearing on this issue, see State v. Kneedy, supra, 232 Iowa 21, 3 N.W.2d 611; State v. Myers, supra, 253 Iowa 271, 111 N.W.2d 660; State v. Daves, 259 Iowa 584, 144 N.W.2d 879; State v. Mabbitt, 257 Iowa 1063, 135 N.W.2d 525.

A common purpose among two or more persons to commit a crime, of course, need not be shown by positive evidence, but may be inferred from the circumstances surrounding the act and from defendant's conduct subsequent thereto. State v. Carlson, 203 Iowa 90, 93, 212 N.W. 312. Here, as in Kneedy, the elements were there from which the jury could find that defendant and Manser were acting in concert to steal these tires. They had a common purpose to drive to Texas in a car with good tires and with a minimum of expense.

We conclude there is sufficient evidence here of defendant's participation in the commission of the crime to warrant submission of both the principal and accessory issues to the jury. In State v. Bennett, 92 R. I. 316, 168 A.2d 282, one of three persons who drove to a shopping center distracted the lone clerk in a clothing store, while the others stole several suits and secreted them in the car trunk. The court held there the evidence

was sufficient to warrant a finding by the jury of joint possession of the stolen property by the distracting party, and sustained a finding of participation by him in the larceny. For a like holding, see Gilley v. State, 227 Ind. 701, 88 N.E.2d 759.

We are satisfied that there was no error in submitting both issues to the jury and that the evidence was sufficient to sustain a conviction on either or both.

V. In assignments Nos. 3 and 5 appellant contends the trial court erred in refusing to amplify Instruction No. 9 as requested "for the reason that said instruction does not properly, fully, correctly or adequately state the law * * * as applied to the facts of the case, respecting aiding and abetting another in the commission of a public offense", and Instruction No. 10 as requested "for the reason that said instruction does not properly, fully, correctly or adequately state the law * * * as applied to the facts of this case, respecting possession or the inference which is permissible from the unexplained possession of recently stolen property, * * *."

However, it appears from the record no request for additional or more explicit instructions was made by defendant when the court submitted its proposed instructions to counsel before they were given to the jury. At that time he orally asked that a special interrogatory be submitted to the jury to inquire whether the defendant was found guilty under Instruction No. 9, being the aiding and abetting instruction, and, he stated, "as to the remainder of the instructions the defendant would reserve his objections and exceptions as provided by law."

We have repeatedly said that the proper time to request additional or more explicit instructions should be before they are given, so that the court may consider and comply with requests having merit. The trial court and the State are entitled to know at that time defendant's contentions as to adequacy and his objections to their sufficiency in time to correct them. State v. Kramer, 252 Iowa 916, 919, 109 N.W.2d 18. In the absence of such a request, we recently held the trial court does not commit reversible error in failing to fully instruct upon the subject of circumstantial evidence. State v. Wessling, 260 Iowa 1244, 150 N.W.2d 301. Since there was no timely request for addi-

954

tional or more explicit instructions, appellant's assignments Nos. 3 and 5 cannot be sustained. State v. Russell, 245 Iowa 1190, 1205, 66 N.W.2d 35.

VI. Nevertheless, we will not let a finding of guilt stand if, upon an examination of the whole record and the instructions given, we are convinced a fair trial was not had. Code section 793.18; State v. Post, 255 Iowa 573, 579, 123 N.W.2d 11, 15, and citations; State v. Mabbitt, supra; State v. Stodola, 257 Iowa 863, 865, 134 N.W.2d 920. Of course, in cases where the instructions are clearly erroneous or it can be said they are obviously confusing, the error would be reversible and a new trial would be required. Neither appears here. In State v. Frink, supra, 255 Iowa 59, 66, 120 N.W.2d 432, we said: "It is the general rule that the giving of an instruction which is abstract, or not authorized by the pleadings and evidence, is harmless error where no prejudice results to the accused."

Appellant contends that the court's abstract Instruction No. 9 relating to aiding and abetting was insufficient, but does not contend it was incorrect or misleading. He specifically complains because the jury was not informed that knowledge, while an element in aiding or abetting, was insufficient alone, that there must be some evidence from which they could find affirmative participation or encouragement, citing State v. Daves, supra, 259 Iowa 584, 144 N.W.2d 879. Although we may agree such an amplification may have been made had it been properly requested, yet we have found the evidence here sufficient to sustain a finding of affirmative participation and must conclude there was no prejudice due to the failure to include in the instruction the statement above mentioned. In any event, no reversible error appears in this assignment.

VII. In his final assignment No. 4 appellant contends the court erred in giving Instruction No. 10 on the inference which is permissible from the unexplained possession of recently stolen property. He contends it is not only confusing, but wrongfully assumes that appellant was found in possession of the stolen tires, and does not instruct on the defendant's theory of the case. Instruction No. 10 told the jury:

"The possession by the defendant of the automobile tires mentioned in the evidence in this case, if same was in his possession, even though said property was stolen, does not in itself create presumption or amount to prima facie proof that the defendant is guilty of stealing said property; but if other evidence in the case shows beyond a reasonable doubt that the property in question was stolen, then proof of possession soon after said theft, unexplained, or in the absence of circumstances raising a reasonable doubt as to whether the possession was acquired otherwise than by the crime charged, is sufficient to justify you in inferring that the defendant is the person who committed or participated in committing the stealing of said property, but you are not bound to so find.

"In this connection you are instructed that the unexplained possession of property recently stolen, taken in connection with the proof of the wrongful taking and carrying away, tends to establish the guilt of the person in whose possession the property is found, and is a circumstance pointing to the guilt of the accused, and is sufficient to support a verdict of guilty, unless from all other facts and attendant circumstances explaining the possession, or joint possession of the defendant of said personal property, if he did have such possession or joint possession, you entertain a reasonable doubt of the guilt of the defendant, and if you do entertain such a reasonable doubt of the guilt of the defendant, you should find him not guilty.

"The possession of the property involved herein by the defendant, if he was in possession of it, need not be explained by the defendant by evidence on his behalf, but the explanation consistent with his innocence may be found by you from all of the facts and circumstances in evidence before you."

Appellant contends that essential to an inference of guilt is a showing that the "possession" was personal, exclusive, conscious, with an assertion of ownership and exercise of dominion and control, and the jury should have been so told. He concedes, however, that "exclusive" does not mean separate, for such exclusive possession may be joint possession of two or more persons where it is shown they are acting in concert. State v.

Kennedy, 195 Iowa 1059, 191 N.W. 877; State v. Fortune, 196 Iowa 884, 194 N.W. 65.

We cannot agree that there was no evidence in this record from which the jury could find defendant was in possession of the property alleged to have been stolen. The evidence, we think, was sufficient to sustain a finding of joint possession. State v. Bennett and Gilley v. State, both supra.

Here again his belated complaint seems to be that the instructions did not sufficiently define what the law considers "possession" or "joint possession" or inform the jury that it must be personal, exclusive and with the express or implied assertion of ownership, and that the jury should have been told the mere presence in the automobile of another in which the stolen property is secreted was not sufficient to establish joint possession without proof that he knew the stolen property was there. No timely request for this elaboration appears, and obviously there was evidence from which the jury could find that defendant helped place and secrete the tires in this car. The evidence is far greater than that in State v. Daves, supra.

Appellant's effort to avoid connection or identification by walking away from the station after the car had left, and his refusal to give his correct name when apprehended, all tend to sustain a finding that he intended to aid his associate in the theft and that he was in joint possession of the stolen property when discovered by the officers.

Although it is the trial court's duty to instruct on the law applicable to the facts and fairly present the issues to the jury, and although we do not recommend this specific instruction, we find therein no reversible error. Furthermore, there is no convincing showing that appellant was prejudiced by the instruction as given. The corpus delicti of the crime is undisputed, as are the facts and circumstances generally. It further appears Manser had asked for and received a separate trial in this case, and that his conviction was affirmed on appeal to this court. We also note in that appeal the same instructions were given and we did not then find them inadequate or defective.

Even though possession be denied or explained, we have held the truthfulness of such denial or explanation is for

the jury. State v. Mabbitt, supra; State v. Marshall, 105 Iowa 38, 41, 74 N.W. 763, 764; State v. King, 122 Iowa 1, 3, 96 N.W. 712, 713; State v. Jensen, 245 Iowa 1363, 1373, 66 N.W.2d 480, 485; State v. Hobbs, 252 Iowa 439, 448, 107 N.W.2d 242, 247.

Having found no reversible error, the judgment must be affirmed.—Affirmed.

All JUSTICES concur.