WIGGINS, Justice
(concurring in part, dissenting in part).
I agree with the majority’s conclusion that the instruction given was erroneous, *905 but depart from the majority’s conclusion that the instructional error does not require a new trial. I conclude a new trial is required for the following reasons.
Based on the language used in the instruction, a jury could have considered the fourth sentence in Instruction No. 15 to be simply a restatement of the law provided in the previous three sentences, as Woodward Resource Center (WRC) suggests. If so, this court might characterize the instruction as a redundant but harmless elaboration of the law. See, e.g., State v. Chatterson, 259 N.W.2d 766, 771 (Iowa 1977) (noting as a whole, instructions properly set out the elements of the crime, and the use of the phrase “ ‘a felony,’ though redundant, was merely a contemporary characterization of the statutory crime ... [and] was nothing more than harmless excess verbiage”).
On the other hand, it is also plausible a jury would read the fourth sentence to be an exception to the first three sentences, assuming the fourth sentence cannot be redundant and must mean something. It is true, of course, the fourth sentence does not use the terms “if’ or “however,” but jurors are not highly skilled linguists interpreting instructions with an eye to grammatical superiority that might be employed by legal cognoscenti. As Chief Judge Traynor -wrote many years ago:
The most troublesome instructions are not those that are demonstrably incorrect, but those that may be incorrectly understood because of their inept language.... If an instruction on a substantial issue is confusing to a reasonable juror, the judgment should be reversed.
Roger J. Traynor, The Riddle of Harmless Error 74 (1970).
In my view, a reasonable juror could conclude the fourth sentence did in fact provide an exception to the principles of the previous three sentences. This is because a juror could reasonably conclude the fourth sentence must state a legal principle beyond that contained in the first three sentences of the instruction.
There is an additional problem. The ambiguous use of the phrase “overriding business justification” in the fourth sentence complicates the relationship between the first three sentences and the fourth sentence. The judge did not define this term in the instruction. What exactly is an overriding business justification? Does it mean a business reason that is more important than the public policy the plaintiff seeks to advance in the wrongful discharge claim? Does it mean that a business justification may substantively trump or override the public policy asserted by the plaintiff by being more important? If so, the instruction is a plainly incorrect statement of law in light of our rejection of the requirement that the plaintiff prove a lack of overriding business justification in a wrongful discharge suit.
One thing is clear, however. Given the majority’s substantive ruling in this case, the fourth sentence added nothing of value to Instruction No. 15. The first three sentences adequately stated the law. The sole question before the court is whether the addition of the fourth sentence is sufficiently vague, ambiguous, conflicting, or confusing to require a new trial under the facts and circumstances of this case.
On balance, I find the instruction sufficiently problematic to require a new trial. On numerous occasions, this court has held that new trials are required when instructions are sufficiently ambiguous to undermine our confidence in the verdict, often characterizing the instructions as confusing. See State v. Becker, 818 N.W.2d 135, 141 (Iowa 2012) (emphasizing that “prejudice will be found where ... the instruc *906 tion could reasonably have misled or misdirected the jury”); McElroy v. State, 637 N.W.2d 488, 500 (Iowa 2001); Anderson v. Webster City Cmty. Sch. Dist., 620 N.W.2d 263, 268 (Iowa 2000) (finding instructions did not mislead jury but noting that “[prejudice results when the trial court’s instruction materially misstates the law, confuses or misleads the jury or is unduly emphasized”); Mills Cnty. State Bank v. Fisher, 282 N.W.2d 712, 715-16 (Iowa 1979) (noting the instruction was “sufficiently ambiguous and confusing to constitute error”); State v. Horrell, 260 Iowa 945, 954, 151 N.W.2d 526, 532 (1967) (noting an “obviously confusing” instruction would constitute reversible error).
Here, while WRC’s linguistic argument is plausible, I also find substantial plausibility in the plaintiffs interpretation of the instruction. I note our cases indicate that when it was possible the jury was confused or mislead, reversal is required. See Becker, 818 N.W.2d at 141. I certainly cannot come to the “inevitable conclusion” that the jury understood the fourth sentence in Instruction No. 15 as a simple restatement of previous concepts in the instruction. See Moser v. Stallings, 387 N.W.2d 599, 605 (Iowa 1986); cf. McElroy, 637 N.W.2d at 500.
WRC, of course, is correct that harmless instructional error does not require reversal. See Asher v. OB-Gyn Specialists, P.C., 846 N.W.2d 492, 499 (Iowa 2014). Most of our harmless error cases, however, do not deal with canvassing of the evidence to determine what a jury would have done had it been properly instructed. See, e.g., McElroy, 637 N.W.2d at 500 (noting the instruction could have reasonably been misinterpreted by the jury without discussing how the jury would have decided with a correct instruction). Instead, the cases deal with analysis of the instructions themselves to determine whether a party has, in fact, been injured by the error or if a reasonable jury could have been misled by the instructions when taken as a whole. See, e.g., id. The imperfect instructions in these cases were harmless as a matter of law.
In this case, WRC argues for a different application of our harmless error rules. Namely, WRC argues even if the instruction was wrong, a jury would have come to the same result in light of the record de-. veloped at trial. The burden of showing the error is harmless rests with WRC. See State v. Hanes, 790 N.W.2d 545, 550 (Iowa 2010). However, when an instruction relates to the core of the case and misleads or confuses the jury, reversal is mandated. See Law v. Hemmingsen, 249 Iowa 820, 824-25, 89 N.W.2d 386, 390-91 (1958); see also Koenig v. Koenig, 766 N.W.2d 635, 646 (Iowa 2009) (“An instruction that improperly states the burden of proof is a material error demanding reversal.”).
In any event, even if I were to conduct a fact-based harmless error analysis here, WRC cannot meet its burden. I note at the outset that the district court denied WRC’s motion for summary judgment in this case. As a result, there were substantial issues to be tried.
I further note the instruction challenged in this case is not on the periphery of the dispute, but is at its heart. Law, 249 Iowa at 824-25, 89 N.W.2d at 390-91; cf. Anderson, 620 N.W.2d at 267 (noting an instruction that amounted to a comment on the evidence did not warrant reversal when clarified by a subsequent instruction). The instruction does not relate to a collateral matter, but to a critical issue in the case. Specifically, when is an impermissible reason, the determinative factor, sufficient to support a wrongful discharge claim? A flawed core instruction in a ease that did not survive summary judgment is *907 not a good candidate for fact-driven harmless error analysis.
WRC summarizes the evidence offered at trial that would support a jury verdict in its favor. WRC stresses the testimony of Rivera was inconsistent and generally incredible, while the testimony of WRC administrators clearly supported WRC’s theory that any report made by Rivera of abusive conduct was not a determinative factor in its decision to discharge. Clearly, WRC offered substantial evidence in support of its claim that it did not wrongfully discharge her.
We cannot conduct a balanced review of the facts by solely considering WRC’s evidence.[4] Rivera offered evidence that relates directly to the instructional issue posed in this appeal. She presented evidence that only two attendance policies were provided to probationary employees: one limiting absences to ten occurrences per year and one providing that when probationary employees experienced three absences within six months they were sometimes terminated, but sometimes were not terminated. She presented evidence that one probationary employee was not terminated after three absences, but was immediately terminated after a fourth absence and after she complained about the care at WRC. A reasonable jury could conclude, based on Rivera’s evidence, that three absences did not automatically lead to discharge and that other factors were relevant in determining whether an employee was to be terminated. In light of her strong job performance, Rivera presented a plausible case — one that survived summary judgment — that the “tipping point” was her complaint regarding the care at WRC. In light of the entire récord, including the denial of the motion for summary judgment and the nature of the offending instruction, I cannot conclude WRC met its burden in showing the confusing instruction was harmless.
HECHT, J., joins this concurrence in part and dissent in part.

. In addition, evidence excluded from trial should not be considered in the harmless error analysis.