**IN THE COURT OF APPEALS OF IOWA**

No. 22-0174
Filed June 7, 2023

**IN THE INTEREST OF D.L.,**
**Minor Child,**

**D.L., Minor Child,**
    Appellant.
_____

Appeal from the Iowa District Court for Scott County, Phillip J. Tabor, District

Associate Judge.

D.L. appeals the adjudication order following disposition in a delinquency

proceeding. **AFFIRMED.**

Jean Capdevila, Davenport, for appellant child.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ. Tabor, J.,

takes no part.

**SCHUMACHER, Presiding Judge.**

D.L. appeals the adjudication following the entry of a dispositional order in delinquency proceedings based on a finding she aided and abetted in possession of stolen property. We conclude there is sufficient evidence in the record to support a finding that D.L. committed a delinquent act that would be considered aiding and abetting in theft by possession of stolen property if she had been an adult. We affirm the decision of the district court.

## I.      Background Facts & Proceedings

This appeal centers on evidence of D.L.'s knowledge that a vehicle in which she was located during the early morning hours of July 23, 2021, was stolen. The following evidence was presented at the adjudication hearing. On July 20, 2021, Wei Yang reported to the Davenport Police Department that his silver-gray 2019 Volkswagen Tiguan had been taken from his garage.[1] At the adjudication hearing, Lt. Kevin Smull testified concerning the drivers of stolen vehicles:

> Actually, their driving mannerisms help them actually stand out. Individuals that we are seeing stealing cars in Davenport and the Quad City area are normally under—or consistently under 18 years of age—juveniles—they drive at high rates of speed and recklessly. The identification of the car, the make, the model, the plate number is huge, but they actually have—over the past several months they have taken the license plates off, but usually if we don't have that, the driving mannerisms is usually what indicates the vehicle is stolen.

On July 23, around 3:00 a.m., Lt. Smull saw a vehicle matching the description of the stolen vehicle being driven "at a high rate of speed" in Davenport. Lt. Smull further testified that once the officers spotted the stolen vehicle, the

---

[1] The State does not allege that D.L. was the person who stole the vehicle.

vehicle began "leap-frogging" through Davenport. Because of this, it took several officers to keep up with the vehicle. Lt. Smull and several other police officers followed the vehicle with their lights and sirens on "because of the—the speeds it was traveling." The vehicle stopped near some gas pumps. Officers confirmed the vehicle was the stolen Tiguan and blocked in the vehicle with their patrol cars. Lt. Smull stated, "[T]he vehicle tried to take off and literally ran into one of our squad cars head-on." There was damage to the squad car and the Tiguan. There were four juveniles in the vehicle, including D.L., who was a back seat passenger, and K.C., who was in the driver's seat. The officers surrounded the vehicle; officers had their service weapons drawn. All four juveniles were removed from the vehicle.

The Tiguan was towed to an impound lot. Sunny Yang, Yang's daughter, went to the impound lot, where she identified the vehicle owned by her father. She testified, "It had, like—the view mirror were [sic] gone, and there's damage from the front light and there's, like, trash everywhere in the car. And there was also, like, holes on the ceiling of the car. I mean—yeah, the roof of the car." She stated that after the vehicle was stolen, there were garbage bags, grocery bags, and food and beverage items in the vehicle that were not there before. Lt. Smull also testified the interior of the car was "[m]essy, like it was trashed."

Following the State's evidence, counsel for the child requested a directed verdict, asserting the State failed to prove the facts as alleged and there was no proof of the element of knowledge. The State responded that D.L. "took part in the theft of this vehicle by aiding in the continued theft of this vehicle." The court denied the motion for directed verdict.

D.L., who was fifteen years old at the time of the incident, testified she did not know anything about the vehicle being stolen. She stated that on July 22, she was with a friend, who was K.C.'s girlfriend, at her uncle's house. D.L. and K.C. exchanged text messages arranging for him to pick them up. When K.C. arrived, he was driving the Volkswagen Tiguan. D.L. stated she had not met K.C. previously and did not suspect anything about the vehicle because "he has a job and he is 17 years old." She testified, "I knew he had a job so I didn't question whose—if it was stolen or not."

D.L. testified K.C. was driving normally when she got into the vehicle. D.L. also testified:

> So we were going to go get tacos and we were going to Davenport to pick up some of the girl's clothes—he was taking her to go get clothes so that she could come back to my uncle's house and stay the night. So I ended up falling asleep in the car, and I'm not sure how long—whatever—from the time he picked me up to the time of the incident is how long we were in the car, but since I was asleep I was not aware of anything that was going on between about an hour after—or after we picked her up.

D.L. stated she did not wake up until she felt the car crash. She testified she was asleep while the vehicle was being driven at a fast speed and through the lights and sirens of the police cars following the Tiguan.

In the adjudication order, the court stated:

> From the description of the operation of the vehicle by Lt. Smull, the Court finds the child's testimony to be not credible, and does not believe the child was asleep during the operation of the vehicle prior to her being taken into custody. The Court finds that the child was aware that the vehicle was stolen due to the way it was operated and due to the appearance of the interior of the vehicle, that being that it was "trashed" and that the child was riding in the vehicle several hours prior to being taken into custody.

D.L. was adjudicated to be a delinquent child for first-degree theft.

The court denied the child's motion for a new trial. The order of disposition placed the child on probation. D.L. now appeals.

## II. Standard of Review

"Juvenile delinquency proceedings are 'special proceedings that provide an alternative to the criminal prosecution of children where the best interest of the child is the objective.'" *In re T.H.*, 913 N.W.2d 578, 582 (Iowa 2018) (quoting *In re M.L.*, 868 N.W.2d 456, 460 (Iowa Ct. App. 2015)). We review juvenile delinquency proceedings de novo. *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). While we give weight to the district court's fact findings, we are not bound by these findings. *In re W.B.*, 641 N.W.2d 543, 545 (Iowa 2001). "We presume the child to be innocent of the charges, and the court cannot find that the child engaged in the delinquent conduct unless the State can prove beyond a reasonable doubt that the child engaged in such behavior." *In re J.A.L.*, 694 N.W.2d 748, 751 (Iowa 2005).

## III. Discussion

In responding to D.L.'s motion for directed verdict, the State asserted it was operating under a theory that D.L. "took part in the theft of this vehicle by aiding in the continued theft of this vehicle." Also, in closing arguments the State asserted D.L. "took part in the theft of this vehicle by aiding in the continuance of the theft by taking a joyride in it with her friends on the evening of the 22nd, morning hours of the 23rd." The State further noted the discrepancies in D.L.'s version of events, with an exhibit reflecting that she was picked up by K.C. nearly twenty-four hours before the crash, and her testimony that she was in the vehicle from the evening of July 22 to the early morning hours of July 23.

In essence, the State claimed D.L. committed the delinquent act of aiding and abetting in theft by possession of stolen property. *See* Iowa Code §§ 703.1, 714.1(4) (2021). Theft by possession of stolen property occurs when a person "[e]xercises control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen, unless the person's purpose is to promptly restore it to the owner or to deliver it to an appropriate public officer." Iowa Code § 714.1(4).

Joint possession of recently stolen property may give rise to an inference of guilt. *State v. Kittelson*, 164 N.W.2d 157, 164 (Iowa 1969). "[I]f the stolen property was in the joint possession of the defendant and others for the use and benefit of the defendant and the others, then the presumption of possession arises." *State v. Sweetman*, 263 N.W. 518, 519 (Iowa 1935); *see also State v. Bige*, 198 N.W. 510, 513 (Iowa 1924).

"To sustain a conviction on the theory of aiding and abetting, the record must contain substantial evidence the accused assented to or lent countenance and approval to the criminal act either by active participation or by some manner encouraging it prior to or at the time of its commission." *State v. West Vangen*, 975 N.W.2d 344, 350 (Iowa 2022). Mere presence at the time of the commission of an offense is not sufficient to show aiding and abetting. *State v. Mabbitt*, 135 N.W.2d 525, 528 (Iowa 1965). "Proof may be supplied directly or through 'circumstantial evidence including presence, companionship and conduct before and after the offense is committed.'" *State v. Brimmer*, 983 N.W.2d 247, 257 (Iowa 2022) (citation omitted).

"[A] defendant's participation as an aiding an[d] abetting accomplice may be proved by circumstantial evidence. Such evidence may be equal in value to, and sometimes more reliable than, direct evidence." *State v. Barnes*, 204 N.W.2d 827, 828 (Iowa 1972) (citation omitted). "[F]actors in combination with circumstantial evidence such as 'presence, companionship, and conduct before *and after* the offense is committed' may be enough from which to infer a defendant's participation in the crime." *Wilker v. Wilker*, 630 N.W.2d 590, 597 (Iowa 2001) (citation omitted) (emphasis added).

The knowledge element of aiding and abetting "requires the abettor to be aware of the underlying offense 'at the time of or before its commission.'" *Brimmer*, 983 N.W.2d at 257 (citation omitted). "Knowledge or intent is usually inferred from the circumstances." *State v. Horrell*, 151 N.W.2d 526, 529 (Iowa 1967). The evidence must be "more than suspicion, or speculation, or conjecture." *Kittelson*, 164 N.W.2d at 162.

D.L. does not contest that the vehicle was stolen or that the vehicle was in the possession of herself and the three other juveniles. D.L. claims there is insufficient evidence in the record to show she had knowledge the vehicle was stolen.[2] She asserts that she was just a back seat passenger in the vehicle. She also contends out that the State did not present evidence she "assented to or lent countenance and approval to the criminal act either by active participation or by

---

[2] D.L. also raises a claim in reference to intent as an element of theft under section 714.1(1), but the State's claims in this case relate to theft by possession of stolen property under section 714.1(4), not theft by taking the property of another under section 714.1(1). We do not address her argument concerning section 714.1(1).

some manner encouraging it prior to or at the time of its commission." *See West Vangen*, 975 N.W.2d at 350.

We will examine some previous cases discussing aiding and abetting the possession of stolen property. In *Mabbitt*, a friend of the defendant asked if he wanted some food and the defendant agreed. 135 N.W.2d at 529. The defendant drove the friend to a restaurant, not knowing if the restaurant was open or not, and the friend returned with some steaks and soup, which he shared with the defendant. *Id.* The defendant stated he was unaware the items had been stolen from the restaurant. *Id.* The jury was instructed on aiding and abetting, as well as possession of stolen property. *Id.* The court stated, "The recent possession of personal property taken from a building feloniously broken and entered is an evidential fact and unless the evidence in relation to that possession and the explanation thereof creates a reasonable doubt of defendant's guilt, a jury is justified in returning a verdict of guilty." *Id.* The court found there was sufficient evidence to show the defendant aided and abetted in the possession of stolen property. *Id.*

In *Horrell*, the defendant and a friend were planning to drive to Texas together. 151 N.W.2d at 530. The vehicle was stopped by officers shortly after leaving a service station and three tires taken from the station were found in the back seat. *Id.* The defendant initially gave officers a false name. *Id.* He denied any knowledge of the tires. *Id.* The court stated:

> Much more than mere association, suspicion, speculation and conjecture appears here. These men associated in a travel enterprise, were constantly together during the time the tires were taken, and would both profit from the taking. While it is possible that a mere stranger to the car owner, a hitchhiker or a guest, would not

know of the plan to steal the tires or in any way encourage that theft, under these circumstances we think the jury could find both participation and aid by defendant and that much more than mere presence at the scene of the larceny appears here.

*Id.* at 531.

In the case *In re C.G.L.*, there was evidence C.G.L. called a friend and insisted they go for a drive together. No. 09-1707, 2010 WL 2598324, at *1 (Iowa Ct. App. June 30, 2010). While they were gone, someone stole the friend's PlayStation 3. *Id.* An employee at GameStop identified a photograph of C.G.L. as one of the people who sold him a PlayStation 3 that day. *Id.* We found there was sufficient evidence to show C.G.L. "aided and abetted the commission of the burglary in this case and jointly committed the theft by possession of stolen property." *Id.* at *2. We determined C.G.L. was "an active and knowing participant" in the possession of stolen property. *Id.*

In *In re C.B.*, C.B. was one of three people in a vehicle officers believed was stolen. No. 20-1499, 2021 WL 2134986, at *1 (Iowa Ct. App. May 26, 2021). When officers followed the vehicle, "[s]uddenly, three young men abandoned the vehicle and began to flee on foot." *Id.* An officer believed the young men were trying to hide or "evade" law enforcement. *Id.* "There were many personal effects in the car, which the owner confirmed were not his." *Id.* We found:

Here, the vehicle was missing for several weeks, and many personal effects of the juveniles were in the car. Further, C.B. and the other juveniles hid and attempted to avoid the police. These factors lend to an inference that C.B. was aware the vehicle was stolen. Thus, we agree with the juvenile court that the evidence demonstrates C.B. knew he, and the other juveniles, were in possession of a stolen vehicle.

*Id.* at *2.

In these cases, the defendant and the person in possession of the stolen property were known to each other. *See id,* (noting the juveniles had been using the vehicle for several weeks); *C.G.L.*, 2010 WL 2598324, at *1 (finding the juvenile and another went together to sell the stolen property); *Horrell*, 151 N.W.2d at 531 (finding the defendant and his friend agreed to travel together to Texas); *Mabbitt*, 135 N.W.2d at 529 (noting the defendant and his friend split the stolen property). In *Horrell*, the Iowa Supreme Court found this association made it more likely there was "both participation and aid by defendant," rather than mere presence at the scene of the offense. 151 N.W.2d at 531.

The Iowa Supreme Court has also found that evidence a person was riding as a passenger in a recently stolen automobile may be insufficient to show the person was in possession of the car. *Kittelson*, 164 N.W.2d at 163 (citing *People v. Abrams*, 196 N.E.2d 801, 802 (Ill. 1935)); *see also Horrell*, 151 N.W.2d at 531 (noting the defendant's circumstances would be different if he was "a mere stranger to the car owner, a hitchhiker or a guest").

The evidence of acquaintance between D.L. and K.C. is found in their text messages, starting at 2:04 a.m. on July 22, 2021:

> K.C.: On my way!
> D.L.: Wait
> K.C.: I'm finna grab sb
> D.L.: Who
> K.C.: Same person I'm right here On my way
> D.L.: I said hold on n****  Ian there yet I'm finna be On my way back
> K.C.: Match us
> D.L.: Bro  Wya
> K.C.: Leaving the d now
> D.L.: Lhh [Emojis]
> K.C.: I gotta change rq
> D.L.: Mmhm

K.C.: Mhm nun I do  I'll be On my way!  In 10
D.L.: Yep
K.C.: Cut it out
D.L.: Same place
K.C.: Finna come grab u
D.L.: Okay
K.C.: Be ready I'm On my way  I'll be there in like 5 mins
D.L.: Okay
K.C.: Outside
D.L.: Here I come
K.C.: Ight
D.L.: I'm tryna find my shoes

D.L. stated, "I was with [K.C.'s] girlfriend, so originally [K.C.] was texting my phone for his girlfriend."  She also stated that K.C. asked her through text messages if he could pick her up, as well as his girlfriend.  On our de novo review, we find the text messages show a level of acquaintance between D.L. and K.C.

And D.L. was present while the vehicle was driven at a high rate of speed. In addition, she was in the vehicle while it was trashed, with a broken mirror and the inside having garbage, food, and beverages that was attributable to the juveniles in the vehicle.  Furthermore, there were holes in the ceiling or roof of the vehicle.  The court found "the child was aware that the vehicle was stolen due to the way it was operated and due to the appearance of the interior of the vehicle, that being that it was 'trashed.'"  We agree that based on this evidence that D.L. had knowledge the vehicle was stolen.

The court found D.L. was not credible in her testimony that she was asleep while in the vehicle and so was unaware of the circumstances that tended to show the vehicle was stolen.  We give weight to the court's findings concerning the credibility of witnesses, although we are not bound by the court's findings.  *See C.B.*, 2021 WL 2134986, at *2.  We agree that D.L.'s statements she was sleeping

while the vehicle was driven at a high rate of speed, and while it was being followed by officers with their overhead lights and sirens on are not credible.

We conclude there is sufficient evidence in the record to support a finding that D.L. committed a delinquent act that would be considered aiding and abetting in theft by possession of stolen property if she had been an adult by having knowledge the vehicle was stolen or having reasonable belief to belief to believe the vehicle was stolen. We affirm the decision of the district court.

**AFFIRMED.**