# IN THE SUPREME COURT OF IOWA

No. 14–0194

Filed June 30, 2015

Amended September 10, 2015

**TERRI ALETA RIVERA,**

Appellant,

vs.

**WOODWARD RESOURCE CENTER** and **STATE OF IOWA,**

Appellees.

Appeal from the Iowa District Court for Dallas County, Randy V. Hefner, Judge.

A terminated employee appeals from a district court judgment entered on a jury verdict in favor of her employer on her claim for wrongful discharge in violation of public policy. **AFFIRMED.**

Jill M. Zwagerman and Bryan P. O'Neill (until withdrawal) of Newkirk Zwagerman, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, Barbara E.B. Galloway, Assistant Attorney General, and Timothy L. Vavricek (until withdrawal), Assistant Attorney General, for appellees.

**APPEL, Justice.**

A terminated employee appeals from a district court judgment entered on a jury verdict in favor of her employer on her claim for wrongful discharge in violation of public policy. The employee contends the district court submitted instructions to the jury that were legally erroneous and confusing, and the district court should have granted her motion for a new trial. Upon our review, we affirm the judgment of the district court.

## I. Factual and Procedural Background.

In late April 2006, Woodward Resource Center (WRC) hired Terri Rivera as a residential treatment worker. WRC, operated by the Iowa Department of Human Services, provides health and rehabilitation services to children and adults with mental and physical disabilities. WRC hired Rivera as a probationary employee for a six-month period but terminated her employment within the probationary period on October 3.

On September 26, 2008, Rivera filed a wrongful discharge suit against WRC and the State.[1] In her petition, Rivera claimed she was terminated because she made complaints to WRC regarding suspected patient abuse and asserted her discharge violated state public policy established in Iowa Code chapters 135C and 235B. WRC contended it terminated Rivera because she accrued three unscheduled absences.

After the resolution of issues related to exhaustion of administrative remedies and an appeal to this court related to the timeliness of the complaint under the applicable statute of limitations,

---

[1]We refer to the defendants collectively as WRC.

the case was remanded to the district court for further proceedings.[2] The case proceeded to trial on December 9, 2013.

At trial, Rivera testified she witnessed several incidents of patient abuse at WRC. She claimed to have observed one of her coworkers punch and push a patient. She also testified she saw a coworker force one patient to eat mayonnaise until he gagged and eat a meal into which he had just vomited. Rivera further told the jury that she was told the same coworker had put jalapeno peppers, known as "hot sauce," in the individual's eyes. Rivera testified she reported the abuse to her supervisor and then reported it to her supervisor's superior in September 2006.

Rivera testified that prior to her report of abuse she received good feedback from her supervisor and was told she was doing a great job. She further asserted she was given additional responsibilities as her employment progressed.

Rivera claimed her report of abuse led to her termination. She testified that when she began her employment at WRC, she was told that if she wanted to make it through her probationary period, she should not make complaints or she would be fired.

Regarding attendance, Rivera offered evidence that WRC did not have a written policy related to three unscheduled absences for probationary employees, but instead had a written policy that was distributed and applied to all employees that allowed up to ten unscheduled absences before termination and required progressive discipline. She presented numerous attendance records of individuals

---

[2]*See generally Rivera v. Woodward Res. Ctr.*, 830 N.W.2d 724 (Iowa 2013).

who were not fired after three absences during their probationary periods.

WRC offered evidence challenging Rivera's version of events, including evidence that Rivera had three unscheduled absences during her probationary period. WRC noted that during one of the unscheduled absences, Rivera was seen attending a garage sale. According to WRC administrators, WRC maintained a long-standing practice of terminating probationary employees who had three unscheduled absences during their probationary period. WRC offered evidence that attendance was very important in a facility providing around-the-clock care and that attendance was the primary factor in determining whether a probationary employee would be retained.

WRC Treatment Program Administrator John Andorf testified he determined termination was appropriate "given her three unscheduled absences" and that the termination was not because of her report of abuse. WRC also offered evidence that Rivera's only report of abuse related to the "hot sauce" incident, that the report was untimely under WRC policies, and that, in any event, WRC investigated the incident and found no abuse.

Before submitting the case to the jury, the district court crafted its proposed jury instructions. Instruction No. 13 stated that in order to recover on her claim, Rivera must prove, among other things, that her making of "reports of suspected dependent adult abuse was the determining factor in the decision to terminate her employment." There is no dispute with respect to Instruction No. 13.

Instruction No. 15 instructed the jury on the determining-factor standard and gave rise to the fighting issues in this case. Instruction No. 15 stated:

The "determining factor" need not be the main reason motivating the decision to terminate employment. The determining factor need only be the reason which tips the scales decisively one way or the other. If Woodward Resource Center would have made the decision to discharge Rivera even if she had not reported suspected dependent adult abuse, the reports were not the determining factor in the decision to terminate her employment. The reports were not the determinative factor if Woodward Resource Center had an overriding business reason for terminating Rivera's employment.

Instruction No. 15 also addressed the issue of pretext:

You may find that Rivera's complaints were the determining factor if Rivera has proved that Woodward Resource Center's stated reasons for its actions were not the real reasons, but were pretexts to hide its motives. Pretext is a stated purpose, reason, explanation, or motive offered by an employer in order to cloak a discriminatory motive. Pretext is simply one method of proof that you may consider.

Rivera objected to Instruction No. 15, stating:

[I]f we've already proven our case that the reason her complaints of a dependent adult abuse were the determining factor in the decision to fire her, then that encompasses it. And then [WRC] get[s] to say but then they have an overriding business justification, which I think then is a burden shifting . . . . I think [the overriding business justification] needs to be treated more like as an affirmative defense . . . .

The district court stated its understanding of the objection: "Well, if I understand your objection. You're basically expressing the same concern with use of the language 'overriding business factor' as expressed by Judge Bennett in *Hagen v. Siouxland Obstetrics.*" In that case, Judge Bennett questioned whether

an employer's lack of an overriding business justification for firing an employee is an independent element of a wrongful discharge claim, or if that element is implicit in the requirement that an employee's protected conduct be the determining factor in an employer's decision to fire the employee.

*Hagen v. Siouxland Obstetrics & Gynecology, P.C. (Hagen I)*, 964 F. Supp. 2d 951, 972 (N.D. Iowa 2013). Rivera responded "Yes" to the district court's inquiry and the district court overruled Rivera's objection to Instruction No. 15.

The case was submitted to the jury, which returned a verdict for WRC. Rivera filed a motion for a new trial, which the district court denied. Rivera appealed.

In this appeal, Rivera challenges Instruction No. 15 on two grounds. First, she claims the "overriding business reason" language in the fourth sentence of Instruction No. 15 improperly shifted the burden of proof and was confusing to the jury. Second, she claims the third sentence of Instruction No. 15 amounted to a "same decision" theory[3] that has no place in a claim for wrongful discharge in violation of public policy.

## II. Standard of Review.

"We review the denial of a motion for new trial based on the grounds asserted in the motion." *Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012) (internal quotation marks omitted). If the motion is based on a legal question, our review is for correction of errors at law. *Id.* The basis for the motion for a new trial in this case was an alleged error in jury instructions, which we review for legal error. *See Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 748 (Iowa 2006). Jury instructions "must convey the applicable law in such a way that the jury has a clear understanding of the issues it must decide." *Thompson v. City of Des Moines*, 564 N.W.2d 839, 846 (Iowa 1997).

---

[3]Rivera describes her same-decision theory as involving an "employer admitting that it used an improper purpose for firing [an] individual, [h]owever the employer then justifies that it had a right to fire the employee because it would have made the same decision to fire her based upon some other reason."

Instructional errors do not merit reversal unless prejudice results. *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009); *Wells v. Enter. Rent-A-Car Midwest*, 690 N.W.2d 33, 36 (Iowa 2004). Prejudice occurs and reversal is required if jury instructions have misled the jury, or if the district court materially misstates the law. *DeBoom*, 772 N.W.2d at 5; *Anderson v. Webster City Cmty. Sch. Dist.*, 620 N.W.2d 263, 268 (Iowa 2000).

### III. Preservation of Error.

We first consider whether Rivera has preserved error with respect to her challenges raised on appeal. There is no question that Rivera preserved her challenge regarding the overriding-business-reason issue arising out of the fourth sentence of Instruction No. 15. On appeal, however, Rivera also challenges the third sentence of Instruction No. 15, claiming that it amounts to a same-decision defense that has no place in public-policy torts and is incorrect as a matter of law. Rivera argues that but-for causation only requires the public-policy violation to be a "tipping point" in the decision-making process, nothing more.

Based on our review of the district court record, we conclude that the same-decision challenge was not preserved. While Rivera emphasized the problems with the "overriding business reason" language in sentence four of Instruction No. 15, Rivera identified no specific problem with respect to the third sentence of the instruction beyond its relationship to the alleged overriding-business-reason flaw. *See Grefe & Sidney v. Watters*, 525 N.W.2d 821, 824 (Iowa 1994) ("[An] objection must be sufficiently specific to alert the trial court to the basis for the complaint so that if error does exist the court may correct it before placing the case in the hands of the jury."); *see also Lynch v. Saddler*, 656 N.W.2d 104, 110–11 (Iowa 2003) (same); *cf.* Iowa R. Civ. P. 1.924

(noting objections to jury instructions must specify the "matter objected to and on what grounds").

### IV. Overview of Issues Presented on Appeal.

In her challenge to Instruction No. 15, Rivera maintains that a plaintiff seeking to prove wrongful discharge in violation of public policy does not need to prove that the employer lacked an overriding business justification. In support of her argument, Rivera cites Iowa Civil Jury Instruction 3100.1, which in turn cites *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682 (Iowa 1990), and *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558 (Iowa 1988). Iowa State Bar Ass'n, Iowa Civil Jury Instruction 3100.1 (2012). Iowa Civil Jury Instruction 3100.1 does not contain an overriding-business-justification element. *See id.*

From this premise, Rivera argues the fourth sentence of the instruction improperly shifted the burden of proof to her to show the employer lacked an overriding business justification for her termination. While recognizing that the element of an overriding business justification has been referred to in some of our cases, *see, e.g.*, *Davis v. Horton*, 661 N.W.2d 533, 535–36 (Iowa 2003) (citing *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 281–82 & n.2 (Iowa 2000)), Rivera argues the element is not appropriate in light of the heightened but-for burden of causation that this court has required in wrongful-discharge-in-violation-of-public-policy claims, *see, e.g.*, *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 301 (Iowa 1998). Rivera traces the derivation of the overriding-business-justification element to a treatise writer, Professor Henry H. Perritt, Jr. *See* 2 Henry H. Perritt, Jr., *Employee Dismissal Law and Practice* § 7.24, at 66–67 (4th ed. 1998) [hereinafter Perritt I]. She contends Professor Perritt clarified his position in later versions of his treatise to note that the fourth element is only applicable in cases in

which the employer concedes the wrongful motive played a part in the employment decision. *See* Henry H. Perritt, Jr., *Employee Dismissal Law and Practice* § 7.08, at 7-100.1 (5th ed. 2008 & Supp. 2014) [hereinafter Perritt II].

Rivera notes the issue was extensively reviewed in *Hagen I*. In *Hagen I*, the United States District Court for the Northern District of Iowa canvassed the development of Iowa law regarding wrongful discharges in violation of public policy. 964 F. Supp. 2d at 972–76. The court noted that under Iowa law, the causation requirement in a wrongful-discharge-in-violation-of-public-policy claim is a heightened "determining factor" standard rather than a lower "motivating factor" standard ordinarily utilized in civil rights claims. *Id.* at 975–76. In light of the heightened causation standard, the court concluded the lack of legitimate business justification was not an additional element in the plaintiff's case. *Id.* at 976. Although the court certified the question to this court, we declined to rule because we were equally divided on the question of whether a public policy was implicated in *Hagen I*. *See Hagen v. Siouxland Obstetrics & Gynecology, P.C. (Hagen II)*, No. 13–1372, 2014 WL 1884478, at *1 (Iowa May 9, 2014) (per curiam).

WRC responds by noting that under our caselaw, the plaintiff must show a lack of legitimate business reason. WRC cites a number of Iowa cases which include a business justification element. *See Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 761 (Iowa 2009); *Fitzgerald*, 613 N.W.2d at 282 n.2. In any event, WRC maintains the instruction was not reversible error because it did not misstate the law or confuse the jury.

To resolve Rivera's challenge to Instruction No. 15, we must engage in a two-step inquiry. The first question is whether, as a matter of law, the plaintiff in a wrongful-discharge-in-violation-of-public-policy case

must prove the employer lacked a legitimate business justification for the termination. If a plaintiff must make such a showing, Rivera has not been harmed by the instruction. Second, if we decide a wrongful-discharge-in-violation-of-public-policy plaintiff is not required to show the employer lacked a legitimate business justification as an element of the claim, we must examine the instruction in this case to determine if it was legally flawed and, if so, whether reversible error occurred.

### V. Elements of Wrongful-Discharge-in-Violation-of-Public-Policy Claim.

#### A. Oscillating Elements of Claim in Iowa Caselaw.

1. *Elements of claim in Iowa cases through* Fitzgerald *and the development of Iowa Civil Jury Instructions Chapter 3100.* In *Springer*, we first held an at-will employee in Iowa could not be terminated for reasons contrary to public policy. 429 N.W.2d at 560–61. Since *Springer*, we have found multiple public policy rationales may support a wrongful termination claim of at-will employees in a variety of settings. *See, e.g., Dorshkind v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 303–06 (Iowa 2013) (reporting violations of law regarding health and safety of patients in an assisted living facility); *Jasper*, 764 N.W.2d at 766–67 (finding sufficient public policy rationale in administrative rule regarding ratio of children to daycare providers); *Fitzgerald*, 613 N.W.2d at 286–88 (refusing to commit or suborn perjury); *Teachout*, 584 N.W.2d at 300–01 (reporting of child abuse); *Tullis v. Merrill*, 584 N.W.2d 236, 239 (Iowa 1998) (complaining that company was not paying insurance benefits); *Lara v. Thomas*, 512 N.W.2d 777, 782 (Iowa 1994) (pursuing unemployment benefits).

In this case, however, the public policy element of a wrongful discharge claim is not contested on appeal. The questions in this appeal relate only to the causation element of a wrongful discharge claim.

We addressed the causation element of a wrongful-discharge-in-violation-of-public-policy claim in *Smith*. 464 N.W.2d at 686. In *Smith*, we held the unlawful purpose must be the determining factor behind the discharge. *Id.* We noted a determining factor "need not be the main reason behind the decision." *Id.* Rather, the unlawful purpose "need only be the reason which tips the scales decisively one way or the other." *Id.*

Eight years later, in *Teachout*, we considered the elements of a wrongful-discharge-in-violation-of-public-policy claim, and the causation requirement in particular. 584 N.W.2d at 299–303. We stated that in order to recover damages for termination of employment in violation of public policy, the "plaintiff must establish (1) engagement in a protected activity, (2) adverse employment action, and (3) a causal connection between the two." *Id.* at 299. Our statement of the elements in *Teachout* did not require the plaintiff prove the employer lacked a reasonable business justification. *See id.*

With respect to causation, we stated "[t]he causation standard in a common-law retaliatory discharge case is high." *Id.* at 301. We noted the "engagement in protected conduct must be the *determinative* factor" in the adverse employment decision. *Id.* at 301–02 (emphasis in original) (citing *Smith*, 464 N.W.2d at 686). Further, we expressly overruled court of appeals precedent equating a determining factor with a predominant factor. *Id.* at 302 n.2. We stated that a factor is determinative if it "tips the scales decisively one way or the other, even if it is not the

predominant reason behind the employer's decision." *Id.* at 302 (internal quotation marks omitted).

In *Phipps v. IASD Health Services Corp.*, we demonstrated application of causation principles in a wrongful-discharge-in-violation-of-public-policy case. 558 N.W.2d 198, 202–03 (Iowa 1997). In that case, we affirmed summary judgment for an employer when the employee's only evidence that protected conduct was linked to his discharge was the fact that he was fired one month after he filed a grievance questioning the legality of his employer's conduct under the Iowa Wage Payment Collections Act. *Id.* at 201, 203. We found the record contained evidence of unacceptable performance and repeated disciplinary problems, which we characterized as legitimate reasons for the employee's discharge. *Id.* at 203. As a result, the *Phipps* court considered legitimate reasons for discharge as evidence that could be used to determine whether the protected conduct was the determining factor in the discharge. *Id.* If the purported reasons were not opposed by substantial evidence to the contrary, they could be outcome determinative. *Id.*; *see also Teachout*, 584 N.W.2d at 303 (finding insufficient evidence of retaliation and evidence that there was a personality conflict between assistant and supervising teacher).

When the Iowa State Bar Association developed its Iowa Civil Jury Instructions in chapter 3100 related to wrongful-discharge-in-violation-of-public-policy actions, it relied upon the *Smith* case. *See* Iowa State Bar Ass'n, Iowa Civil Jury Instruction ch. 3100. It included a causation requirement that the protected conduct be the determining factor in the adverse employment action. *Id.* No. 3100.1. With respect to the determining factor, Instruction 3100.3 stated, "A determining factor need

not be the main reason behind the decision. It need only be the reason which tips the scales decisively one way or the other." *Id.* No. 3100.3.

The notion that the lack of a legitimate business justification might be an element of the plaintiff's case first appears in our cases in *Fitzgerald*. 613 N.W.2d at 282 n.2. In *Fitzgerald,* the court considered whether a wrongful discharge claim could be brought based upon a public policy favoring truthful testimony. *Id.* at 285. We concluded Iowa's statutes against perjury and the suborning of perjury provided a public policy rationale sufficient to support a wrongful termination action. *Id.* at 286.

We then proceeded to consider whether the evidence in the case related to causation was sufficient to survive summary judgment. *Id.* at 289. We cited *Teachout* for the proposition that protected conduct "must be the determinative factor in the decision to terminate the employee." *Id.* (citing *Teachout,* 584 N.W.2d at 301–02). As in *Teachout,* we characterized the standard of causation as "high." *Id.*; *see also Teachout,* 584 N.W.2d at 301. We also recognized, as in *Teachout* and *Phipps,* that "the existence of other legal reasons or motives for the termination are relevant in considering causation." *Fitzgerald,* 613 N.W.2d at 289; *see also Teachout,* 584 N.W.2d at 303; *Phipps,* 558 N.W.2d at 203. Based on our review of the record, we concluded there was sufficient evidence to preclude summary judgment. *Fitzgerald,* 613 N.W.2d at 289.

In *Fitzgerald,* we included a footnote suggesting for the first time in our caselaw that there may be an overriding-business-justification element to wrongful-discharge-in-violation-of-public-policy cases. *Id.* at 282 n.2. In footnote 2, we noted "[s]ome courts are beginning to articulate the elements of a cause of action for wrongful discharge" as including four elements, including an element that the "[e]mployer lacked

an overriding business justification for the dismissal (the absence of justification element)." *Id.* We cited cases from two other jurisdictions, *Gardner v. Loomis Armoured Inc.*, 913 P.2d 377, 382 (Wash. 1996) (en banc), and *Collins v. Rizkana*, 652 N.E.2d 653, 657 (Ohio 1995). *Id.* We noted Professor Perritt advocated the approach in his academic writings. *Id.* at 282 & n.2; *see also* Perritt I § 7.9, at 17–19; Henry H. Perritt, Jr., *The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie?*, 58 U. Cin. L. Rev. 397 (1989) [hereinafter *The Future of Wrongful Dismissal Claims*]. We did not expressly adopt the approach, but stated it was "a helpful guide and actually parallels the approach we have followed in addressing the tort on a case-by-case method." *Fitzgerald*, 613 N.W.2d at 282 n.2. The bottom line is that in *Fitzgerald*, we cited and applied the three elements of wrongful discharge from *Teachout*, but suggested in a footnote that there was some authority for a fourth element, lack of an overriding business justification. *Id.* at 281 & 282 n.2.

2. *Elements of claim in Iowa cases after* Fitzgerald. The discussion in the *Fitzgerald* footnote resurfaced in *Davis*. *See* 661 N.W.2d at 535–36. In *Davis*, we considered whether participating in a mediation process and hiring an attorney was protected conduct that could give rise to a wrongful-discharge-in-violation-of-public-policy claim. *Id.* at 536. The case involved an employee in a county treasurer's office who had difficulties with the elected county treasurer. *Id.* at 534–35. She requested and received formal mediation, but was placed on probation and demoted after the mediation session. *Id.* at 535. She then hired an attorney to contest the demotion. *Id.* About a month later, she was fired. *Id.*

In *Davis*, we discussed the four-element test from the *Fitzgerald* footnote in the body of the opinion and declared the wrongful-discharge-in-violation-of-public-policy tort had four elements. *Id.* at 535–36 (citing *Fitzgerald*, 613 N.W.2d at 282 n.2). We rejected the notion that participation in mediation was protected conduct that could give rise to a wrongful-discharge-in-violation-of-public-policy claim. *Id.* at 536. With respect to the claim that hiring counsel was protected conduct, we stated that "on the facts of the present dispute it is clearly impossible to separate [the plaintiff's] act in hiring an attorney from her act in challenging a personnel decision made by her employer" and that the "act should not be insulated from sanction merely because it has been carried out through an attorney." *Id.*

We again cited the *Fitzgerald* formulation of the elements of a wrongful-discharge-in-violation-of-public-policy claim in *Lloyd v. Drake University*, 686 N.W.2d 225, 228 (Iowa 2004) (citing *Fitzgerald*, 613 N.W.2d at 282 n.2). Interestingly, in *Lloyd*, we stated the four-element *Fitzgerald* approach was in accord with the three-element *Teachout* approach. *Id.* However, we did not address the causation question, and only addressed the question of whether a discharge for attempting to uphold the criminal laws of the state may be a violation of public policy. *See id.* at 229.

Finally, in *Jasper*, we again cited the *Fitzgerald* formulation as stating the elements of a wrongful-discharge-in-violation-of-public-policy claim. *Jasper*, 764 N.W.2d at 761 (citing *Fitzgerald*, 613 N.W.2d at 282 n.2). However, in *Jasper*, as in *Lloyd*, we were not called upon to consider any issues related to the putative fourth element of the cause of action. *See id.* (addressing only the public policy and evidence proving causation elements).

3. Hagen I, II, *and* III. Against this backdrop of Iowa authority, the United States District Court for the Northern District of Iowa wrestled with the question of elements of a wrongful-discharge-in-violation-of-public-policy claim in Iowa. In *Hagen I*, the plaintiff physician claimed he was wrongfully discharged in violation of public policy because

> (a) [he] report[ed], stat[ed] an intention to report, or [stat]ed that he might report, to a hospital, conduct of nurses that [he] believed may have involved wrongful acts or omissions;

> (b) [he] disclos[ed] to a patient or a patient's family that the patient may have been the victim of negligent care or malpractice; or

> (c) [he] consult[ed] with an attorney, stat[ed] an intention to consult with an attorney, or stat[ed] that he might consult with an attorney, about whether another doctor or nurses had committed wrongful acts of omissions that [he] should report to the Iowa Board of Medicine or a hospital.

964 F. Supp. 2d at 956.

In *Hagen I*, the district court certified the following question to this court:

> Under Iowa law, is an employer's lack of an "overriding business justification" for firing an employee an independent element of a wrongful discharge claim, or is that element implicit in the element requiring that an employee's protected activity be the determining factor in the employer's decision to fire the employee?

*Id.*

In its discussion of the question of lack of business justification under Iowa law, the district court recognized the formulation of *Fitzgerald* and its progeny contained four elements for wrongful-discharge-in-violation-of-public-policy claims, including lack of business justification. *Id.* at 975. Yet, the district court reasoned that the "business justification element" was implicit in the determining factor

analysis of causation. *Id.* at 974. According to the district court, other legitimate business reasons could prevent the protected conduct from tipping the scale and thus being a determining factor in the adverse employment action. *Id.* However, the district court went on to explain:

> Nothing in Iowa law supports the proposition that merely having an alternative business reason for firing an employee can insulate an employer from a wrongful discharge claim where the evidence shows that the reason that *actually* tipped the scales toward firing that employee violates public policy.

*Id.* at 974–75 (emphasis in original).

The district court then examined the derivation of the four-element test cited in *Fitzgerald* and subsequent cases. *Id.* at 975–76. The district court traced the four-element test starting from *Jasper* through *Fitzgerald* to the *Gardner* and *Collins* cases cited in the *Fitzgerald* footnote. *Id.* As acknowledged in *Fitzgerald,* the district court found these cases derived their analysis from the writings of Professor Perritt. *Id.* at 975.

The district court then turned its attention to the writings of Professor Perritt and his seminal law review article in which he presented the elements of a wrongful-discharge-in-violation-of-public-policy action, including the fourth element of lack of legitimate business justification. *Id.* at 975 (citing *The Future of Wrongful Dismissal Claims,* 58 U. Cin. L. Rev. at 398–99). The district court pointed out, however, that in Professor Perritt's formulation, the *third* element of wrongful discharge, the element related to causation, differed materially from Iowa law. *See id.* at 975–76. Under Professor Perritt's approach, causation need only be a *motivating factor* for the adverse employment action, while under Iowa law protected conduct must be *the determining factor. Id.*; *cf. The Future of Wrongful Dismissal Claims,* 58 U. Cin. L. Rev. at 399 (describing

the causation element as: "[t]he plaintiff's dismissal was motivated by conduct related to the public policy").

In the law, such distinctions and nuances matter. As explained by the district court, under a motivating-factor standard of causation, a plaintiff could prevail when protected conduct was a motivating factor even if the determining factor was the legitimate business reason. *See Hagen I*, 964 F. Supp. 2d at 976. Thus, an additional element may make some sense in preventing such an untoward result. *Id.* The district court reasoned that because of Iowa's use of the higher and more demanding determining-factor standard, the fourth element in the Perritt formulation should not be regarded as a separate element under Iowa law but as implicit in Iowa's causation standard. *Id.* Because the district court conceded that Iowa law was not clear on the point, however, it certified the question to us. *Id.* We divided evenly on the first question of whether the plaintiff presented conduct protected by public policy, however, and we declined to answer the other questions posed by Judge Bennett. *See Hagen II*, 2014 WL 1884478, at \*1. On remand, the federal district court denied all claims for relief based upon instructions that did not require the plaintiff to prove lack of legitimate business reason as a separate element. *Hagen v. Siouxland Obstetrics & Gynecology, P.C. (Hagen III)*, 23 F. Supp. 3d 991, 1009 (N.D. Iowa 2014).

**B. Discussion of Elements of Wrongful-Discharge-in-Violation-of-Public-Policy Claims.** The above discussion reveals that our precedents in this area are not surefooted. Prior to *Fitzgerald*, there was no suggestion of a fourth element in a wrongful-discharge-in-violation-of-public-policy case. *See Teachout*, 584 N.W.2d at 299. While footnote 2 in *Fitzgerald* was elevated into the text in our subsequent cases, the question of whether an employee proved a lack of legitimate business

justification was not explicitly an issue in these later cases. *See Jasper*, 764 N.W.2d at 761; *Lloyd*, 686 N.W.2d at 228–29; *Davis*, 661 N.W.2d at 535–36. Further, we declared that the four elements of wrongful discharge contained in the *Fitzgerald* footnote were parallel to our public policy tort cases, which was not quite correct. *See Lloyd*, 686 N.W.2d at 228. Language in our earlier cases, never disowned, indicate that a plaintiff may prevail in a wrongful-discharge-in-violation-of-public-policy case even if the protected conduct is not the primary factor, but is nevertheless the determining factor, causing the adverse employment action. *See Teachout*, 584 N.W.2d at 302 n.2; *Smith*, 464 N.W.2d at 686. We thus regard this case as an opportunity to clarify the elements of a wrongful-discharge-in-violation-of-public-policy claim, the allocation of the burden of proof, and the role of legitimate business reasons or justifications in the claim.

First, we recognize the basic and consistent teaching of our caselaw, namely, that in order to prevail on a wrongful discharge claim in violation of public policy, the plaintiff must show the protected conduct was the determining factor in the adverse employment action. *See Lloyd*, 686 N.W.2d at 229; *Teachout*, 584 N.W.2d at 301; *Smith*, 464 N.W.2d at 686. Further, we recognize our caselaw has consistently stated a determining factor is one that tips the balance in an employment decision. *See Teachout*, 584 N.W.2d at 302 n.2; *Smith*, 464 N.W.2d at 686. In order to be the determining factor, it is not necessary the protected conduct be "the main reason behind the decision," but it must be the factor that makes the difference in the employment outcome. *Smith*, 464 N.W.2d at 686; *see Davis*, 661 N.W.2d at 536 (analogizing determining factor to the "final straw in [the employer's] decision to

terminate [the plaintiff's] employment"). No party challenges these established principles in this case.

Second, we conclude the lack of legitimate business justification is not an element of the claim that the plaintiff must prove. Plaintiffs are rarely required to prove a negative. Moreover, Judge Bennett's distinction between motivating factor and determining factor has been recognized in our cases. *See, e.g.*, *DeBoom*, 772 N.W.2d at 9 n.4 (noting use of motivating factor was preferable to determining factor in a case involving pregnancy discrimination "in order to eliminate confusion between tortious discharge and discrimination claims"). Because under our cases plaintiffs must prove that the protected conduct was the determining factor, Iowa law does not impose liability on an employer when the determining factor was a legitimate business reason and unlawful retaliation was simply a motivating factor.

Third, the fact the plaintiff does not have the burden to show the employer lacked an overriding business justification does not mean evidence related to an employer's legitimate business reasons has no relevance in a wrongful-discharge-in-violation-of-public-policy case. Indeed, an employer will prevail if it convinces the fact finder that the legitimate business reasons supporting the action were so strong as to defeat the conclusion that the protected conduct was the determining factor in the adverse employment decision. *See, e.g.*, *Phipps*, 558 N.W.2d at 200–01, 203. In other words, the Iowa Civil Jury Instructions on causation are sufficiently broad to allow an employer to make the case that the legitimate business reasons, and not the protected conduct, were the determining factor in the employment decision.

Fourth, we believe there may be some relatively rare circumstances when an employer is entitled to an affirmative defense of an overriding

business justification. As noted by Professor Perritt in his revised treatise, there may be occasions in which an employee is in fact terminated because of protected conduct, but the employer should nonetheless prevail. *See* Perritt II § 7.08, at 7-100.1. For instance, in *Harman v. La Crosse Tribune*, an employee claimed he was fired for conduct protected by the First Amendment to the United States Constitution, but his conduct also violated the ethical rules of attorneys. 344 N.W.2d 536, 540 (Wis. Ct. App. 1984). In this situation, with two competing public policies, the employer may be able to establish an overriding business reason for the termination. *See id.* at 540–41. As noted by Professor Perritt, in such a case, the employer admits the protected conduct caused the termination, but asserts another policy trumps the public policy asserted by the employee. *See* Perritt II § 7.08, at 7-100.1. No such claim, however, has been raised in this appeal.

## VI. Rivera's Challenge to Jury Instruction No. 15.

**A. Rivera's Position**. Rivera asserts that if she is not required to prove as an element of her wrongful-discharge-in-violation-of-public-policy claim that there was not an overriding business justification—as we have ruled—then Instruction No. 15 is necessarily flawed. For the most part, Rivera's challenge to the instruction focuses on the fourth sentence of Instruction No. 15. This sentence states, "The reports were not the determinative factor if Woodward Resource Center had an overriding business reason [i.e. its attendance policy] for terminating Rivera's employment."

Rivera claims the fourth sentence improperly invites the jury to find that even if the unlawful reason for termination was "the determinative factor" under the first three sentences of the instruction, the jury could nevertheless conclude Rivera could not prevail because of

a business reason that trumped, or was substantively more important, than the public policy she sought to promote in the wrongful discharge claim. According to Rivera, in order for a policy to "override" a wrongful termination based on public policy, the asserted overriding policy cannot be a business reason, but must be a competing public policy.

Rivera illustrates her argument by citing *Harman*, in which a law firm terminated a shareholder lawyer for making public comments about a client. 344 N.W.2d at 538. The shareholder lawyer claimed the discharge violated his First Amendment rights. *Id.* According to Rivera, the court found that even if the plaintiff in *Harman* was fired as a result of public comments, the public policy of enforcing ethical obligations to clients overrode the alleged public policy in free speech that the plaintiff sought to advance. *See id.* at 540.

Rivera further points to *Smith*, a case in which we emphasized a mere internal policy of an employer did not substantively trump the public policy articulated by the legislature to prevent terminations of employees who file workers' compensation claims. *See* 464 N.W.2d at 684–85. Here, Rivera asserts that an overriding business justification is an affirmative defense available only when the employer concedes the public policy motivation was the determinative factor in the discharge. She argues this narrow concept has no application in this case.

In support of this argument, Rivera points out that the term "overriding business reason" is not defined. According to Rivera, a jury could presume the word "override" means "[t]o prevail over; to nullify or set aside." *Black's Law Dictionary* 1279 (10th ed. 2014). Rivera asserts a jury could read the sentence and erroneously conclude a business reason such as attendance could "override" an otherwise unlawful discharge.

Rivera notes that under our caselaw, a factor is determinative if it "tips the scales decisively one way or the other" even if it is not the predominant reason. *DeBoom*, 772 N.W.2d at 13; *Teachout*, 584 N.W.2d at 302. However, the language of "overriding business reason" suggests that if the business reason is *more important*, then the plaintiff cannot prevail even if the unlawful reason was the determining factor.

Rivera's argument can be expressed in mathematical terms. Consider, for instance, a situation in which an employer's decision to terminate requires 100 points. Assume that a termination was the result of mixed motives of legitimate and illegitimate reasons. Further, assume the jury determines 90 points may be assigned to legitimate business reasons, and 10 points to unlawful retaliation in violation of public policy. At 100 points, a termination occurs. Although the legitimate business reasons were weightier than the unlawful reasons in this hypothetical, a wrongful termination claim would lie because "the determining factor," or the factor that tipped the balance to termination, was the unlawful retaliatory motive.

Rivera concedes the first two sentences in Instruction No. 15 were correct statements of law. However, she argues the fourth sentence conflicts with them. When one part of the instruction fairly describes the law, while another part incorrectly states the law, Rivera argues reversal is required. *See State v. Leins*, 234 N.W.2d 645, 648–49 (Iowa 1975) (reversing based on an instruction containing both correct and incorrect rules). Simply because one instruction is correct does not mean, according to Rivera, that an incorrect instruction may be ignored. *See DeBoom*, 772 N.W.2d at 13 (reversing based on conflicting causation burden of proof instructions).

Rivera claims *DeBoom* is instructive in this case. In *DeBoom*, the trial court defined "determining factor" in conflicting and confusing ways. 772 N.W.2d at 12–13. In one instruction, the trial court used a higher standard, the "tip the scales" standard, but used a lower "motivating factor standard" in another. *Id.* Although one of the instructions was correct, the inconsistency in the instructions necessitated a new trial. *Id.* at 13–14.

Here, according to Rivera, the district court did the same thing. The district court properly stated the determining factor required for causation is the reason that tips the scales, but then in the fourth sentence instructed the jury that attendance guidelines or other legitimate business reasons can override a mandatory duty to report abuse. According to Rivera, this is precisely what happened in *DeBoom*. Further, Rivera suggests sentence four improperly put the burden on her to prove attendance was not an overriding factor.

Based on the above, Rivera contends Instruction No. 15 was flawed. Rivera believes the fourth sentence conflicts with the previous sentences, but further notes that a confusing instruction also warrants reversal. *See McElroy v. State*, 637 N.W.2d 488, 500 (Iowa 2001) (noting we generally reverse when an instruction is confusing); *Anderson*, 620 N.W.2d at 268 (emphasizing prejudice results when an instruction confuses the jury).

Finally, Rivera argues the instructional error was prejudicial. Rivera contends she offered substantial evidence to support her claim. She notes the evidence showed the only written attendance policy provided to probationary employees stated that employees were subject to termination after ten absences. Further, Rivera offered evidence that several employees had more than three absences during their

probationary period and were not terminated. Moreover, Rivera offered testimony from an employee who had accrued more than three absences during her probationary period and retained her position, but was subsequently fired after her next absence following her complaint regarding a coworker abusing a resident. Rivera argues that the tipping point—the determinative factor that put her in the termination category rather than the retention category—was the reporting of abuse.

**B. WRC's Position.** WRC contends Instruction No. 15 was not conflicting or confusing even if Rivera does not have the burden of showing a lack of an overriding business reason. WRC notes the district court in fact agreed with Rivera that she was not required to prove the absence of an overriding business reason. According to WRC, nothing in the instruction confused the jury, required Rivera to prove her case twice, impermissibly shifted the burden of proof, or improperly permitted the jury to allow WRC to avoid liability.

WRC emphasizes the earlier sentences in Instruction No. 15 plainly stated that "the determining factor" need not be the main reason motivating the decision to terminate employment but need only be the reason "which tips the scales decisively one way or the other." Further, WRC emphasizes Instruction No. 15 did not explicitly shift the burden of proof.

WRC does not advance a standard of review for jury instructions, or review cases with confusing or conflicting jury instructions. WRC emphasizes, however, that while there is no requirement for trial courts to follow jury instructions of the Iowa State Bar Association, courts may do so, as long as the instructions fully and fairly embody the law and applicable principles. *See State v. Ambrose*, 861 N.W.2d 550, 562–63 (Iowa 2015) (Wiggins, J., concurring specially) ("[T]he trial court has a

duty to make sure the [Iowa State Bar Association's] instruction conforms with Iowa law.").

In the alternative, WRC argues any error in the instruction was harmless. WRC recognizes that "[e]rrors in jury instructions are presumed prejudicial unless the record affirmatively establishes there was no prejudice." *Asher v. OB-Gyn Specialists, P.C.*, 846 N.W.2d 492, 496 (Iowa 2014) (internal quotation marks omitted). WRC argues that when nonconstitutional error is involved, "the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *Id.* (internal quotation marks omitted).

WRC contends the essential choice for the jury in this case was one of credibility. The jury had a choice of either believing Rivera or believing WRC. WRC asserts Rivera's testimony was fraught with inconsistency; she offered widely diverging accounts of what occurred. Further, WRC notes Rivera lied on her application of employment, attended a garage sale when she called in sick, and had at least three unscheduled absences. WRC characterizes Rivera's evidence of retaliation as speculation and conjecture, while contending its own evidence was overwhelming.

**C. Iowa Caselaw on Jury Instructions.** We begin with a brief review of Iowa caselaw regarding challenges to jury instructions. First, we examine the substantive bases for challenges to jury instructions. Then we review application of the harmless-error doctrine to cases in which jury instructions, though imperfect, do not form a basis for retrial.

1. *Substantive bases for challenges to jury instructions.* The basic framework for a successful challenge to jury instructions is well established. A material misstatement of the law in a jury instruction, of

course, ordinarily requires reversal. *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 575 (Iowa 1997). For example, instructions that improperly allocate the burden of proof are subject to reversal. *See Koenig v. Koenig*, 766 N.W.2d 635, 646 (Iowa 2009). "When jury instructions contain a material misstatement of the law, the trial court has no discretion to deny a motion for a new trial." *Benn v. Thomas*, 512 N.W.2d 537, 539 (Iowa 1994).

We also reverse when instructions are misleading and confusing. *See, e.g., McElroy*, 637 N.W.2d at 500. We have said an instruction is misleading or confusing if it is "very possible" the jury could reasonably have interpreted the instruction incorrectly. *Id.*; *see also State v. Horrell*, 260 Iowa 945, 954, 151 N.W.2d 526, 532 (1967) (requiring new trial when instructions are "obviously confusing"). On the other hand, if a review of the instructions "leads to the *inevitable* conclusion that the jury *could not* have misapprehended the issue," then the challenge is without merit. *Moser v. Stallings,* 387 N.W.2d 599, 605 (Iowa 1986) (emphasis added); *Mora v. Savereid,* 222 N.W.2d 417, 422 (Iowa 1974) (same). An erroneous jury instruction is not necessarily cured by a later instruction correctly stating the law. *See Leins*, 234 N.W.2d at 648–49 (reversing for new trial when trial court gave an instruction containing two tests, one proper and one improper, and the reviewing court was unable to determine which rule the jury applied).

Our cases illustrate these principles. For example, in *State v. Hanes*, we noted the trial court gave an incorrect instruction when the last sentence of the instruction improperly suggested that the defendant need not have specific intent at the time of the alleged act, notwithstanding previous language in the marshalling instruction that provided a correct statement of the law. 790 N.W.2d 545, 555–56 (Iowa

2010). Although remanding on other grounds, we noted the district court "should not instruct the jury upon retrial that the defendant's specific intent may exist at any time." *Id.* at 556. Similarly, in *DeBoom,* we reversed the trial court's denial of a motion for a new trial in a wrongful discharge case when one instruction suggested that the proper causation standard was a "determining factor" while another instruction used the "motivating factor" standard. 772 N.W.2d at 12–14.

In determining whether an instruction is inaccurate, misleading, or confusing, we look to the instructions as a whole and do not require perfection. For example, in *State v. Pelelo*, while we disapproved of an additional sentence added to an entrapment instruction, we concluded that, nonetheless, the instructions taken as a whole accurately reflected the law. 247 N.W.2d 221, 225 (Iowa 1976). Similarly, in *Robeson v. Dilts*, we held that although it would have been preferable for an instruction to contain specifications of negligence, there was no reversible error, as an earlier instruction contained the specifications. 170 N.W.2d 408, 415 (Iowa 1969).

We have also disapproved repetitive instructions that unduly emphasize a feature of the case. For instance, repeated emphasis that the city was not an insurer for all injuries that occurred on the premises was reversible error. *See Clarke v. Hubbell*, 249 Iowa 306, 316, 86 N.W.2d 905, 911 (1957). On the other hand, when largely repetitive or overlapping instructions provide some additional guidance, reversal may not be required. *See, e.g., Burkhalter v. Burkhalter,* 841 N.W.2d 93, 106–07 (Iowa 2013) (finding that "[w]hile the instructions overlapp[ed] to some degree . . . a single repetition coupled with a clarification of the law does not amount to error"); *Andrews v. Struble,* 178 N.W.2d 391, 400 (Iowa

1970) (holding repetition not proper but permitted when "of some aid in clarifying the requirement of proximate cause").

2. *Harmless-error doctrine.* Even when we find an instruction legally inadequate, error may be harmless. In applying the harmless-error doctrine we "first guess" the jury. In other words, we try to divine what a jury would have done had it been properly instructed, an admittedly delicate task that should emphasize humility over hubris.

We have held the same harmless-error analysis for nonconstitutional trial errors applies in the case of a nonconstitutional challenge to jury instructions. *Hanes*, 790 N.W.2d at 550. The burden is on the party claiming harmlessness. *See id.* We assume prejudice unless the record affirmatively establishes that there was no prejudice. *Id.* at 551. Harmless error may be found, for example, if the record affirmatively establishes that a party has not been injuriously affected by the alleged error or that there has not been a miscarriage of justice. *Id.* at 550.

In some cases, application of the harmless-error doctrine is relatively clear. For example, when an erroneous instruction makes the burden more onerous on the successful party, any error is clearly harmless and reversal is not required. *See Asher*, 846 N.W.2d at 499; *Hagenow v. Schmidt*, 842 N.W.2d 661, 677 (Iowa 2014). Similarly, we have held that when a party succeeds on two theories, one of which is properly instructed, any error in the instructions on the improperly instructed second theory is harmless. *See Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 290 (Iowa 1994).

We have also found harmless error when one instruction arguably omits a legal requirement that is included in subsequent instructions on the ground that the instructions are to be read as a whole. *Thavenet v.*

*Davis*, 589 N.W.2d 233, 237 (Iowa 1999); *Robeson*, 170 N.W.2d at 414. When, however, an inadequate instruction relating to the right of recovery goes to "the very heart of the case," it is not rescued by abstract instructions elsewhere. *Law v. Hemmingsen*, 249 Iowa 820, 825, 89 N.W.2d 386, 390–91 (1958).

**D. Analysis of Rivera's Challenge to the Jury Instruction.** The differences between the parties centers on the relationship of the fourth sentence of Instruction No. 15 to the earlier sentences and the meaning of the phrase "overriding business reason." Rivera claims a jury could conclude the fourth sentence trumps or provides an exception to the first three sentences. WRC essentially argues the fourth sentence merely restates the correct principles of law provided in the first three sentences of Instruction No. 15.

We first clear underbrush. The fact the district court agreed with Rivera's general proposition that she was not required to prove there was no overriding business justification does not necessarily justify the use of the instruction. The question before us is not what the court subjectively intended. Indeed, the subjective intent of the district court is irrelevant. The question is what the language of the instruction would mean to a reasonable jury. *See State v. Liggins*, 524 N.W.2d 181, 185 (Iowa 1994) ("The interpretation of . . . instruction[s] requires the court to determine what a reasonable juror could have understood the charge as meaning." (Internal quotation marks omitted.)); *see also State v. Winders*, 359 N.W.2d 417, 420 (Iowa 1984); *State v. Rinehart*, 283 N.W.2d 319, 322 (Iowa 1979).

We further reject Rivera's argument that the instruction as written impermissibly embraces a same-result doctrine, as it relates to the fourth sentence of Instruction No. 15. Instruction No. 15 correctly states that

the unlawful reason must be a tipping point or determining factor in the decision. If it is not—if indeed the termination was based upon other factors and the unlawful conduct did not tip the balance—then the termination is lawful. To the extent Rivera believes the "same result" argument is inappropriate when the unlawful retaliation is not the determinative factor in the termination, we do not agree.

We now turn to the analysis of the language of the instruction. Our caselaw instructs that any evaluation of an alleged flaw in a jury instruction must be considered based upon the instructions as a whole, not piecemeal. *See Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 536 (Iowa 1999); *Thavenet*, 589 N.W.2d at 236. Taking the instructions as a whole, we conclude a reasonable jury would read the sentences in Instruction No. 15 harmoniously. The first sentences of Instruction No. 15 clearly indicate that a determining factor need not be the most weighty but must only "tip the scales" of decision-making. This correct statement of law is not expressly contradicted by the fourth sentence. The fourth sentence can be easily harmonized with the first three by interpreting the phrase "overriding business reason" to mean a business reason that prevents the unlawful retaliation from being the determinative factor in the discharge. Nothing in the fourth sentence indicates it is an exception to the previous sentences, but it appears to be a simple restatement of the law. "An instruction is not confusing if a full and fair reading of all of the instructions leads to the inevitable conclusion that the jury could not have misapprehended the issue . . . ." *Moser*, 387 N.W.2d at 605. Although the fourth sentence provided no additional guidance and is not approved, we do not find the additional sentence misled or confused the jury in light of the totality of the instructions. As a result, Rivera is not entitled to a new trial.

**VII. Conclusion.**

For the above reasons, we conclude Rivera is not entitled to a new trial. The judgment of the district court is affirmed.

**AFFIRMED.**

All justices concur except Wiggins and Hecht JJ., who concur in part and dissent in part.

#14–0194, *Rivera v. Woodward Res. Ctr.*

**WIGGINS, Justice (concurring in part, dissenting in part).**

I agree with the majority's conclusion that the instruction given was erroneous, but depart from the majority's conclusion that the instructional error does not require a new trial. I conclude a new trial is required for the following reasons.

Based on the language used in the instruction, a jury could have considered the fourth sentence in Instruction No. 15 to be simply a restatement of the law provided in the previous three sentences, as Woodward Resource Center (WRC) suggests. If so, this court might characterize the instruction as a redundant but harmless elaboration of the law. *See, e.g., State v. Chatterson*, 259 N.W.2d 766, 771 (Iowa 1977) (noting as a whole, instructions properly set out the elements of the crime, and the use of the phrase " 'a felony,' though redundant, was merely a contemporary characterization of the statutory crime . . . [and] was nothing more than harmless excess verbiage").

On the other hand, it is also plausible a jury would read the fourth sentence to be an exception to the first three sentences, assuming the fourth sentence cannot be redundant and must mean something. It is true, of course, the fourth sentence does not use the terms "if" or "however," but jurors are not highly skilled linguists interpreting instructions with an eye to grammatical superiority that might be employed by legal cognoscenti. As Chief Judge Traynor wrote many years ago:

> The most troublesome instructions are not those that are demonstrably incorrect, but those that may be incorrectly understood because of their inept language. . . . If an instruction on a substantial issue is confusing to a reasonable juror, the judgment should be reversed.

Roger J. Traynor, *The Riddle of Harmless Error* 74 (1970).

In my view, a reasonable juror could conclude the fourth sentence did in fact provide an exception to the principles of the previous three sentences. This is because a juror could reasonably conclude the fourth sentence must state a legal principle beyond that contained in the first three sentences of the instruction.

There is an additional problem. The ambiguous use of the phrase "overriding business justification" in the fourth sentence complicates the relationship between the first three sentences and the fourth sentence. The judge did not define this term in the instruction. What exactly is an overriding business justification? Does it mean a business reason that is *more important* than the public policy the plaintiff seeks to advance in the wrongful discharge claim? Does it mean that a business justification may substantively trump or *override* the public policy asserted by the plaintiff by being *more important*? If so, the instruction is a plainly incorrect statement of law in light of our rejection of the requirement that the plaintiff prove a lack of overriding business justification in a wrongful discharge suit.

One thing is clear, however. Given the majority's substantive ruling in this case, the fourth sentence added nothing of value to Instruction No. 15. The first three sentences adequately stated the law. The sole question before the court is whether the addition of the fourth sentence is sufficiently vague, ambiguous, conflicting, or confusing to require a new trial under the facts and circumstances of this case.

On balance, I find the instruction sufficiently problematic to require a new trial. On numerous occasions, this court has held that new trials are required when instructions are sufficiently ambiguous to undermine our confidence in the verdict, often characterizing the

instructions as confusing.  *See State v. Becker*, 818 N.W.2d 135, 141 (Iowa 2012) (emphasizing that "prejudice will be found where . . . the instruction could reasonably have misled or misdirected the jury"); *McElroy v. State*, 637 N.W.2d 488, 500 (Iowa 2001); *Anderson v. Webster City Cmty. Sch. Dist.,* 620 N.W.2d 263, 268 (Iowa 2000) (finding instructions did not mislead jury but noting that "[p]rejudice results when the trial court's instruction materially misstates the law, confuses or misleads the jury or is unduly emphasized"); *Mills Cnty. State Bank v. Fisher*, 282 N.W.2d 712, 715–16 (Iowa 1979) (noting the instruction was "sufficiently ambiguous and confusing to constitute error"); *State v. Horrell*, 260 Iowa 945, 954, 151 N.W.2d 526, 532 (1967) (noting an "obviously confusing" instruction would constitute reversible error).

Here, while WRC's linguistic argument is plausible, I also find substantial plausibility in the plaintiff's interpretation of the instruction. I note our cases indicate that when it was possible the jury was confused or mislead, reversal is required.  *See Becker*, 818 N.W.2d at 141.  I certainly cannot come to the "inevitable conclusion" that the jury understood the fourth sentence in Instruction No. 15 as a simple restatement of previous concepts in the instruction.  *See Moser v. Stallings*, 387 N.W.2d 599, 605 (Iowa 1986); *cf. McElroy*, 637 N.W.2d at 500.

WRC, of course, is correct that harmless instructional error does not require reversal.  *See Asher v. OB-GYN Specialists, P.C.*, 846 N.W.2d 492, 499 (Iowa 2014).  Most of our harmless error cases, however, do not deal with canvassing of the evidence to determine what a jury would have done had it been properly instructed.  *See, e.g., McElroy*, 637 N.W.2d at 500 (noting the instruction could have reasonably been misinterpreted by the jury without discussing how the jury would have decided with a

correct instruction). Instead, the cases deal with analysis of the instructions themselves to determine whether a party has, in fact, been injured by the error or if a reasonable jury could have been misled by the instructions when taken as a whole. *See, e.g., id.* The imperfect instructions in these cases were harmless as a matter of law.

In this case, WRC argues for a different application of our harmless error rules. Namely, WRC argues even if the instruction was wrong, a jury would have come to the same result in light of the record developed at trial. The burden of showing the error is harmless rests with WRC. *See State v. Hanes*, 790 N.W.2d 545, 550 (Iowa 2010). However, when an instruction relates to the core of the case and misleads or confuses the jury, reversal is mandated. *See Law v. Hemmingsen*, 249 Iowa 820, 824–25, 89 N.W.2d 386, 390–91 (1958); *see also Koenig v. Koenig*, 766 N.W.2d 635, 646 (Iowa 2009) ("An instruction that improperly states the burden of proof is a material error demanding reversal.").

In any event, even if I were to conduct a fact-based harmless error analysis here, WRC cannot meet its burden. I note at the outset that the district court denied WRC's motion for summary judgment in this case. As a result, there were substantial issues to be tried.

I further note the instruction challenged in this case is not on the periphery of the dispute, but is at its heart. *Law*, 249 Iowa at 824–25, 89 N.W.2d at 390–91; *cf. Anderson*, 620 N.W.2d at 267 (noting an instruction that amounted to a comment on the evidence did not warrant reversal when clarified by a subsequent instruction). The instruction does not relate to a collateral matter, but to a critical issue in the case. Specifically, when is an impermissible reason, the determinative factor, sufficient to support a wrongful discharge claim? A flawed core

instruction in a case that did not survive summary judgment is not a good candidate for fact-driven harmless error analysis.

WRC summarizes the evidence offered at trial that would support a jury verdict in its favor. WRC stresses the testimony of Rivera was inconsistent and generally incredible, while the testimony of WRC administrators clearly supported WRC's theory that any report made by Rivera of abusive conduct was not a determinative factor in its decision to discharge. Clearly, WRC offered substantial evidence in support of its claim that it did not wrongfully discharge her.

We cannot conduct a balanced review of the facts by solely considering WRC's evidence.[4] Rivera offered evidence that relates directly to the instructional issue posed in this appeal. She presented evidence that only two attendance policies were provided to probationary employees: one limiting absences to ten occurrences per year and one providing that when probationary employees experienced three absences within six months they were sometimes terminated, but sometimes were not terminated. She presented evidence that one probationary employee was not terminated after three absences, but was immediately terminated after a fourth absence and after she complained about the care at WRC. A reasonable jury could conclude, based on Rivera's evidence, that three absences did not automatically lead to discharge and that other factors were relevant in determining whether an employee was to be terminated. In light of her strong job performance, Rivera presented a plausible case—one that survived summary judgment—that the "tipping point" was her complaint regarding the care at WRC. In light

---

[4]In addition, evidence excluded from trial should not be considered in the harmless error analysis.

of the entire record, including the denial of the motion for summary judgment and the nature of the offending instruction, I cannot conclude WRC met its burden in showing the confusing instruction was harmless.

Hecht, J., joins this concurrence in part and dissent in part.